927 P.2d 31

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Daniel J. MARTINEZ, Defendant–
Appellant.**

No. 16331.

Court of Appeals of New Mexico.

Sept. 6, 1996.

Certiorari Denied Oct. 29, 1996.

Tom Udall, Attorney General, Daniel F. Haft, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Paul J. Kennedy, Albuquerque, for Defendant–Appellant.

## OPINION

FLORES, Judge.

1. The opinion filed August 6, 1996 is withdrawn and the following substituted therefor.

2. Defendant appeals his convictions for three counts of trafficking in a controlled substance (cocaine) contrary to NMSA 1978, Sections 30–31–20(A)(2), –2(O) (Cum.Supp. 1995), and –7(A)(1) (Repl.Pamp.1989). Defendant raises four issues on appeal: (1) whether Defendant's Sixth Amendment right to confront adverse witnesses was violated when he was not permitted to impeach the State's confidential informant who had an alleged motive to fabricate testimony based on the pendency of serious criminal charges; (2) whether the district court had jurisdiction to proceed on a "Superseding Grand Jury Indictment"; (3) whether Defendant was denied effective assistance of counsel; and (4) whether the district court fundamentally erred by failing to instruct on entrapment. Because we agree that Defendant's Sixth Amendment right to confront adverse witnesses was violated, we reverse his conviction on Count I and remand for a new trial. We affirm Defendant's convictions on Counts II and III.

*BACKGROUND*

3. For approximately two years before the events leading up to this case, Veronica Mullins (Mullins) worked for the Santa Fe County Sheriff's Office as a paid confidential informant, supplying information to Detective Chris Crespin. In late January 1994 Mullins approached Detective Crespin and advised him that she could make a "controlled buy" from Defendant, with whom Detective Crespin was familiar from a previous incident. An operation was planned wherein Mullins would buy drugs from Defendant on several occasions. According to this plan, other state agents would become increasingly involved until enough evidence against Defendant was obtained to arrest and prosecute him without the State having to expose Mullins. However, the plan was interrupted after only two buys when Defendant was arrested by the City of Santa Fe Police Department.

4. For the first buy, which occurred on January 25, 1994, Mullins went to Defendant's home to purchase cocaine with money supplied by the State. While officers from the sheriff's office observed from a concealed position, Mullins entered the house and re-turned with cocaine, which she testified she bought from Defendant.

5. Two days later, Mullins returned to Defendant's home to make another purchase, again under surveillance by the sheriff's office. She testified that Defendant had no cocaine, but had agreed to bring some to her home later that day. When Defendant arrived at Mullins' home later that afternoon, Agent Mark Gonzales was present posing as a drug buyer and wearing a voice-activated tape recorder. Other officers were monitoring the activities in and around Mullins' home from vehicles equipped with special surveillance devices. Defendant did not bring any cocaine with him, but agreed to take Mullins to a friend's home to purchase some cocaine with money supplied by Agent Gonzales. Mullins testified that she and Defendant drove around the block and while stopped at a stop sign, Defendant took some cocaine from under his seat; they then returned to Mullins' home without making any other stops. Mullins and Agent Gonzales both testified that Defendant handed the drugs to Agent Gonzales. Agent Gonzales told Defendant that his drug connection had been jailed and that he wanted to set up a new source of drugs. Defendant said that if Agent Gonzales contacted Mullins when he wanted to buy drugs, he would "go down to my buddy's and pick it up right away."

6. Defendant's testimony differed significantly from Mullins'. Defendant testified that when Mullins came to his home on January 25, she took something from the large tool box she kept in his kitchen and left. He testified that when she came to his house two days later, she asked if he would take her to buy a gift for her daughter later that day. When he arrived at Mullins' home, she and a stranger asked him for some cocaine. Although he had no cocaine, he agreed to drive her to her friend's home so she could buy cocaine with money the stranger provided. He testified that he drove her to her friend's house and waited in the car while Mullins went inside. Defendant testified that Mullins delivered the cocaine to Agent Gonzales and that he never touched the drugs.

7. On January 28 the apartment of Defendant's friend, Darlene Fowler (Fowler),

was raided by City of Santa Fe police officers. Louie Martinez (Louie), a mutual friend of Defendant and Fowler, was arrested for possessing cocaine. After Louie had been taken to jail but while some officers were still in Fowler's apartment, Defendant knocked on the door. The police instructed Fowler to open the door and invite Defendant in while they hid in a back room. Soon after Defendant entered the apartment, the officers came out of hiding with their guns drawn, secured Defendant, and patted him down. They found a pager and some cocaine in his jacket pocket. Defendant was arrested and charged with possession of cocaine with intent to distribute. Defendant claims the police planted the drugs. After the January 28 arrest, the sheriff's office terminated its undercover operation and proceeded against Defendant.

8. During the pendency of this case, Mullins was arrested and charged with accessory to murder and aggravated battery in an unrelated matter. The charges, originally filed in Torrance County, were dismissed without prejudice due to a venue problem and transferred to the District Attorney's office in Albuquerque. At the time of Defendant's trial, the Albuquerque office had not taken any action on the charges. In pre-trial interviews, both Mullins and Detective Crespin denied that any deal had been made to exchange Mullins' testimony in this case for a dismissal. The district court granted the State's motion in limine to prohibit Defendant from cross-examining witnesses about Mullins' arrest or the charges which had been dismissed.

## DISCUSSION

### I. Confrontation Clause

9. Defendant argues on appeal that he was denied his rights under the Sixth Amendment Confrontation Clause because the district court did not allow him to inquire into the possibility that Mullins was biased or motivated to fabricate testimony against Defendant in exchange for leniency from the State. "The Sixth Amendment to the United States Constitution provides that, in criminal prosecutions, the accused shall have the right to confront the witnesses against him." *State v. Casaus*, 121 N.M. 481, 487–88, 913

P.2d 669, 675–76 (Ct.App.1996). The Confrontation Clause is applicable to the states through the Fourteenth Amendment. *See Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974).

■ 10. Initially, we address the State's contention that Defendant failed to preserve his Sixth Amendment Confrontation Clause claim. The State bases its argument on Defendant's failure to expressly mention the Confrontation Clause or his constitutional right to confront the witnesses at the motion hearing.

11. Our Appellate Rules state that "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked." NMRA 1996, 12–216(A). This Court recently ruled that a defendant's Confrontation Clause claim was preserved when the defendant neither expressly cited the Confrontation Clause nor used the phrase " 'motive to lie' " as a basis for his argument, but had presented arguments that "were adequate to alert the trial court to the basis for Defendant's proffer." *State v. Johnson*, 121 N.M. 77, 80, 908 P.2d 770, 773 (Ct.App.), *cert. granted*, 120 N.M. 828, 907 P.2d 1009 (1995); *cf. United States v. Nez*, 661 F.2d 1203, 1206 (10th Cir.1981) (Confrontation Clause claim not preserved where motive to fabricate not proffered as theory of admissibility and tendered argument did not clearly relate to such a theory).

12. Defendant's theory of admissibility tendered at the motion hearing was that Mullins had a motive to lie "because these cases ... could still be pending or refiled." We find that Defendant adequately alerted the district court to the asserted error and invoked an intelligent ruling, thereby preserving his Confrontation Clause claim for appeal. *See State v. Flanagan*, 111 N.M. 93, 98, 801 P.2d 675, 680 (Ct.App.) (purpose of rule "is to apprise the trial court of the nature of the error and invoke an intelligent ruling on the issue"), *cert. denied*, 111 N.M. 77, 801 P.2d 659 (1990).

■ 13. The State also urges us to disregard Defendant's Confrontation Clause claim because he failed to set forth in his brief-in-chief how the issue was preserved, as re-

quired by NMRA 1996, 12–213(A)(3). NMRA 12–213, however, does not require this Court to disregard an issue when an appellant fails to comply with its provisions. *Cf. State v. Goss,* 111 N.M. 530, 533, 807 P.2d 228, 231 (Ct.App.) (where defendant fails to comply with NMRA 12–213, "appellate court *may* decline to address such contention"), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991) (emphasis added). Moreover, in his reply brief Defendant set out how the issue was preserved. In sum, this issue deals with a fundamental right and having found that the issue was properly preserved, we address the issue on its merits.

 14. When cross-examination is unduly restricted, a constitutional error results. *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111. Therefore, we must determine whether the district court's ruling amounted to an undue restriction on Defendant's right to cross-examine adverse witnesses. While the scope of cross-examination usually lies within the sound discretion of the district court, Confrontation Clause claims are issues of law that we review de novo. *United States v. Ellzey,* 936 F.2d 492, 495 (10th Cir.), *cert. denied,* 502 U.S. 950, 112 S.Ct. 400, 116 L.Ed.2d 350 (1991); *see also State v. Ruiz,* 120 N.M. 534, 536, 903 P.2d 845, 847 (Ct. App.), *cert. denied,* 120 N.M. 498, 903 P.2d 240 (1995).

 15. The State asserts that the restriction on cross-examination was proper because the defense failed to provide any evidence linking Mullins' cooperation in the case against Defendant to the prosecution of the charges against her. The State offers *Ellzey* as support for this position. In *Ellzey,* a sheriff under indictment on state charges was a minor prosecution witness in a federal case. The witness testified under oath, but outside the hearing of the jury, that he held no subjective belief that his testimony could help him secure a favorable outcome in the state's case against him. Nevertheless, the defense sought to cross-examine the witness to show that he had a motive to fabricate testimony in hope of increasing his chances for leniency. *Ellzey,* 936 F.2d at 495. The district court barred the proposed cross-examination and the Tenth Circuit affirmed,

reasoning that no direct link had been established "between the witness's testimony and potential reward or retribution by the charging prosecution." *Id.* at 496–97.

16. We disagree with the State that *Ellzey* is dispositive in this case. *Ellzey* depended, at least in part, on the fact that charges against the witness were pending in state court while the trial at which the witness was called to testify was in federal court. *Id.; see also Carrillo v. Perkins,* 723 F.2d 1165, 1170 (5th Cir.1984) (distinguishing witnesses subject to prosecution by the same agency prosecuting the defendants from witnesses in federal cases who were shielded from cross-examination regarding prior arrests by a state and a foreign country). Here, the charges against Defendant were all in state court. Likewise, all charges originally filed against Mullins were in state court.

 17. We agree with Defendant that he should have been permitted to inquire into any possibility that Mullins was biased or motivated to fabricate testimony, even in the absence of evidence that a deal had been or could have been made exchanging her testimony for leniency. A jury, when judging a witness's credibility, should be able to take into consideration whether a witness *hoped* to curry favor by cooperating with the prosecution. *Cf.* 3 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 607[03], at 44–46 (1995) ("In judging credibility, juries may take into consideration that a witness ... hoped to have his sentence reduced."). A defendant's right to cross-examine witnesses concerning bias or motivation to fabricate favorable testimony "does not hinge on whether *in fact* any such deals or understandings were effected." *United States v. Mayer,* 556 F.2d 245, 249 (5th Cir.1977) (emphasis added). When a witness faces prosecution, even on an unrelated matter, bias may result from the treatment that witness hopes to receive. *See also Burr v. Sullivan,* 618 F.2d 583, 587 (9th Cir.1980) ("A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception.").

18. The D.C. Circuit addressed a similar issue in *United States v. Anderson*, 881 F.2d 1128 (D.C.Cir.1989). In *Anderson*, the district court denied the defense an opportunity to cross-examine a prosecution witness regarding an unrelated murder indictment that had been dismissed without prejudice. The D.C. Circuit Court of Appeals held that the prohibition violated the defendant's Sixth Amendment rights because the "jury might reasonably have found that the government's ability to reinstate the murder charge furnished the witness with a motive for favoring the prosecution in her testimony." *Id.* at 1130–31. The court held that "[w]here the district court is aware of a recently dismissed indictment, . . . cross-examination must be permitted to raise the possibility that the prosecution's ability to reinstate the indictment gave the witness a motive for favoring the prosecution." *Id.* at 1138. To the prosecution's argument that the defense had presented no evidence of an actual cooperation agreement, the court responded:

> To require evidence of an actual cooperation agreement . . . overlooks the inherent and independent relevance of the mere fact of a recently dismissed murder charge. . . . Evidence that a prosecution witness is subject to reindictment by the prosecution is, by itself, probative of potential bias and is therefore a proper subject of cross-examination under the Confrontation Clause.

*Id.* at 1139; *see also Brown v. Dugger*, 831 F.2d 1547, 1556 (11th Cir.1987) (cross-examination restriction improper even though detective denied making deal with witness) (Clark, J., concurring); *Carrillo*, 723 F.2d at 1172 (right to cross-examination not diminished although witness denied making a deal); *Greene v. Wainwright*, 634 F.2d 272, 276 (5th Cir.1981) (existence of a deal not crucial to cross-examination on motivation to cooperate with prosecution).

■ 19. In this case, we determine that the district court erred by prohibiting Defendant from impeaching Mullins for possible bias arising from any criminal charges originally filed against her. A determination of constitutional error does not, however, end a Confrontation Clause inquiry; constitutional errors are subject to a harmless error analy-sis. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To determine whether a constitutional error is harmless beyond a reasonable doubt, we consider:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); *see also State v. Woodward*, 121 N.M. 1, 10, 908 P.2d 231, 240 (1995).

■ 20. After reviewing the record in this case and applying the *Van Arsdall* factors, we determine that the error was harmless beyond a reasonable doubt as to Count II. Mullins' testimony regarding Count II was not significant given the other evidence in support of Count II. The jury was provided with a transcript of the taped conversation between Defendant, Mullins, and Agent Gonzales that took place during the transaction. Moreover, the other officers who were monitoring in and around the residence testified at trial, making Mullins' testimony cumulative. The only testimony from Mullins that was not supported by the officers' testimony or the transcript was where Mullins and Defendant drove to after leaving the house and where Defendant got the cocaine. However, this testimony is not necessary to support the conviction for Count II because Agent Gonzales testified that (1) Defendant offered to take Mullins to a friend's house to purchase some cocaine with money supplied by Agent Gonzales; (2) when Defendant and Mullins returned to the residence, Defendant handed the drugs to Agent Gonzales; and (3) Defendant agreed to supply Agent Gonzales with drugs in the future. Whether Defendant obtained the cocaine from under his car seat or from another source is irrelevant. Furthermore, Agent Gonzales' testimony corroborated Mullins' testimony. Therefore, the prosecution's overall case was strong even without Mullins' testimony. Finally, Defendant was otherwise permitted to cross-

examine Mullins regarding her bias in favor of the State. Defense counsel cross-examined Mullins, attempting to impeach her testimony and discredit her with admissions of past drug use, and exposing her status as a past confidential informant for the State. In light of all this, we conclude that the error was harmless beyond a reasonable doubt as to Count II.

■ 21. After reviewing the record in this case, however, we are unable to say that the error was so inconsequential as to be harmless beyond a reasonable doubt with regard to Count I. Mullins was the State's only witness on Count I. Thus, Mullins' testimony and her credibility as a witness was essential to the State's case on that count. The State's case was intimately tied to Mullins' credibility, as evidenced by the emphasis the State placed on her credibility in its closing argument. Her credibility was linked, in turn, to her motivation for testifying—an area of inquiry that the district court closed to the defense. By not allowing defense counsel to cross-examine Mullins regarding any agreement she may have made with the State in exchange for her testimony against Defendant, the district court denied Defendant the only means of challenging the reliability of Mullins' accusation. Because Defendant was not afforded the opportunity to exercise fully his Sixth Amendment confrontation rights, we reverse his conviction on Count I and remand for a new trial.

## II. Superseding Grand Jury Indictment

■ 22. Defendant argues that the district court had no jurisdiction to hear this case because the prosecution was undertaken on a "Superseding Grand Jury Indictment." Initially, an indictment was returned against Defendant. Defense counsel moved the court to dismiss the indictment because the tapes of the proceeding were inaudible. Although there is no record of the first indictment having been dismissed, a second indictment, titled "Superseding Grand Jury Indictment," was handed down.

23. In support of his argument, Defendant relies on NMRA 1996, 5–201(A), which requires a complaint, information, or indictment to be filed before a criminal prosecution

may commence. Defendant argues that the rule makes no provision for commencement of a criminal prosecution under a "Superseding Grand Jury Indictment." However, NMRA 5–201(D) defines and describes the form of an indictment as follows:

> An indictment is a written statement returned by a grand jury containing the essential facts constituting the offense, common name of the offense and, if applicable, a specific section number of the New Mexico Statutes which defines the offense. All indictments shall be signed by the foreman of the grand jury. Indictments shall be substantially in the form prescribed by the court administrator. The names of all witnesses upon whose testimony an indictment is based shall appear on the indictment.

The superseding indictment under which the prosecution was commenced fits the definition and form of an indictment as set out by the rule. Therefore, we find that the superseding indictment was a proper indictment.

■ 24. Defendant testified at the second grand jury hearing, but not at the first. He argues that the prosecutor used the superseding indictment for improper purposes by using his testimony to impeach him at trial. In support of this argument, Defendant cites NMSA 1978, Section 31–6–9.1 (Repl.Pamp.1984), which states that "[t]he prosecuting attorney shall not use the grand jury solely for the purpose of obtaining additional evidence against an already indicted person on the charge or accusation for which the person was indicted." We are not persuaded by Defendant's argument. The second indictment was ordered in response to Defendant's own motion; its purpose was to restore the testimony lost in an equipment failure. Defendant's decision to testify and the prosecutor's decision to use that testimony to impeach him does not affect the validity of the second indictment.

## III. Ineffective Assistance of Counsel

■ 25. Defendant contends he failed to receive effective assistance of counsel because trial counsel failed to object to

some objectionable evidence, failed to move to suppress certain evidence, and failed to request an entrapment instruction. Defendant urges us to remand for a new trial. This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel. *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.), *cert. denied*, 114 N.M. 501, 841 P.2d 549 (1992). A prima facie case of ineffective assistance of counsel is not established where "a plausible, rational strategy or tactic can explain the conduct of defense counsel." *Id.* Based on the record before us, we hold that Defendant has not established a prima facie case of ineffective assistance of counsel. We discuss Defendant's complaints individually.

■ 26. Defendant complains that trial counsel "failed to object to large amounts of important hearsay and opinion testimony." Our review of the record reveals that, although counsel did not tender every sustainable objection, she objected to evidence frequently and effectively throughout the trial. Failure to object to every instance of objectionable evidence does not render counsel ineffective; rather, failure to object "falls within the ambit of trial tactics." *State v. Rodriguez*, 107 N.M. 611, 615, 762 P.2d 898, 902 (Ct.App.), *cert. denied*, 107 N.M. 546, 761 P.2d 424 (1988).

■ 27. Defendant also complains that counsel failed to object to the admission of a chart showing large quantities of cocaine used by the State to show how dealers package cocaine. Although relatively small amounts of cocaine form the basis for these convictions, the chart showed quantities up to a kilogram. However, trial counsel offered a motion in limine, which was denied by the district court, to require the State to cover the areas of the chart that concerned amounts greater than those at issue in this case. Failure to renew at trial a motion concerning an evidentiary matter which has been denied in limine does not constitute ineffective assistance of counsel. *Cf. State v. Richardson*, 114 N.M. 725, 728, 845 P.2d 819, 822 (Ct.App.) (failure to renew motion at trial, which lacked merit because it con-

cerned evidence that was highly probative, does not constitute ineffective assistance absent a constitutional basis for seeking exclusion), *cert. denied*, 114 N.M. 550, 844 P.2d 130 (1992).

■ 28. Defendant further claims he was denied effective assistance of counsel when trial counsel failed to demand that the court enforce the subpoena calling defense witness Fowler. When Fowler failed to appear at the trial, counsel agreed to have Fowler's grand jury testimony read into evidence. The only testimony Fowler was expected to provide that was unavailable either through other witnesses or through her grand jury testimony was that she believed Mullins was responsible for the raid on her home. This expected testimony supported Defendant's theory that he was "set-up" by the State, a theory which Defendant consistently presented throughout the trial. Considering the relatively minor part Fowler's testimony would have played in the trial, we cannot say that counsel's decision was unreasonable.

■ 29. Defendant states that, at trial, he relied on the theory that he was " 'setup,' i.e., entrapped" because of his previous legal troubles in Santa Fe. He thus argues that, considering his theory of the case, trial counsel's failure to request objective and subjective entrapment instructions amounted to ineffective assistance of counsel.

■ 30. The key to a subjective entrapment defense is the defendant's predisposition to commit the crime. *Baca v. State*, 106 N.M. 338, 339, 742 P.2d 1043, 1044 (1987). Defendant failed to introduce any evidence to show his lack of predisposition to involve himself in the trafficking of cocaine which would entitle him to a subjective entrapment instruction. In fact, the record shows that Defendant offered to help Agent Gonzales obtain drugs in the future.

■ 31. Defendant was required to make some showing that the law enforcement officers involved in his case "exceeded the standards of proper investigation" before he was entitled to an instruction on objective entrapment. *Id.* at 341, 742 P.2d at 1046;

see also *State v. Sheetz,* 113 N.M. 324, 329, 825 P.2d 614, 619 (Ct.App.1991). Objective entrapment is premised on the public policy against allowing the police to foster crime. *Baca,* 106 N.M. at 340, 742 P.2d at 1045. After reviewing the record in this case, we do not believe that Defendant was entitled to an objective entrapment instruction. Regarding Counts I and II, Defendant claimed that Mullins provided the drugs to the State and put the blame on him. As to Count III, he claims that the law enforcement officers lured him to Fowler's apartment and planted the cocaine on his person. These claims do not describe crime-fostering tactics that exceeded the standards of proper investigation; rather, they describe illegal police tactics aimed at framing an innocent person—a theory the jury apparently did not believe.

32. Defendant did not provide any evidence which is consistent with an entrapment instruction. Therefore, he was not entitled to an entrapment instruction and trial counsel did not fall short of providing effective assistance by failing to request such an instruction. *Cf. State v. Castrillo,* 112 N.M. 766, 769, 819 P.2d 1324, 1327 (1991) (defendant entitled to instruction if evidence exists to support instruction).

33. Finally, Defendant argues that he was denied effective assistance of counsel by trial counsel's failure to move to suppress the cocaine which was the subject of Count III. In addressing this argument, we consider (1) whether the record supports the motion and (2) whether "a reasonably competent attorney could have decided that a motion to suppress was unwarranted." *State v. Stenz,* 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct. App.), *cert. denied,* 109 N.M. 562, 787 P.2d 842 (1990).

34. We believe that the record does support the motion. This Court has determined that officers cannot detain a non-resident who is present when a home is raided on the basis of his presence alone; there must be " 'presence plus' " facts that would make detaining or searching a non-resident reasonable under the circumstances. *State v. Graves,* 119 N.M. 89, 93, 888 P.2d 971, 975 (Ct.App.1994). In *Graves,* this Court held that the defendant should have been released

"[o]nce it was established that (1) [d]efendant was not a resident of the house being subjected to a warranted search, (2) the police had no specific reason to fear [d]efendant, and (3) the police had no more than a bare suspicion that he might be connected with the contraband expected to be found in the premises." *Id.* at 94, 888 P.2d at 976.

35. Here, Jose "Marshall" Lujan, the officer who conducted the pat-down of Defendant, testified that Defendant was not a target in the investigation which led to the raid on Fowler's home. Lujan testified that he performed the pat-down "just for my protection and for [Defendant's] protection." A second officer, Clarence Garcia, testified that he had his gun drawn when he approached Defendant not because of any specific threat that Defendant posed to police, but because "you never know what could happen in an investigation like that." Therefore, according to the officers' own testimony, they had no reasonable suspicion that Defendant posed a specific threat or was connected to the cocaine found at the apartment that would satisfy *Graves'* "presence plus" requirement and justify detaining and patting down Defendant.

36. Our ineffective assistance of counsel inquiry, however, does not end with the finding that the record supports the motion. We must also determine whether "a reasonably competent attorney could have decided that a motion to suppress was unwarranted." *Stenz,* 109 N.M. at 538, 787 P.2d at 457. Considering the timing of Defendant's trial, counsel's failure to move to suppress the cocaine was not unreasonable. *Graves* was filed less than a month before trial and was not published until four months after the trial. Therefore, it is understandable that *Graves* had not come to counsel's attention. *See Pierce v. Albertson's, Inc.,* 121 N.M. 369, 372–73, 911 P.2d 877, 880–81 (1996) (commenting on the reasonableness of a case not having been brought to the court's attention when the opinion was filed one month before and published two weeks after a hearing). Without *Graves,* the support for the motion is much less convincing. Trial counsel chose not to move to suppress the

evidence for reasons that are not part of the record, and we will not second guess her decision. *See State v. Helker*, 88 N.M. 650, 652, 545 P.2d 1028, 1030 (Ct.App.1975), *cert. denied*, 89 N.M. 5, 546 P.2d 70, *and* 429 U.S. 836 (1976). Thus, we do not find ineffective assistance of counsel for failure to move to suppress evidence.

## IV. District Court's Failure To Instruct on Entrapment

 37. Defendant argues that it was fundamental error for the district court to fail to, sua sponte, instruct the jury on entrapment. Since we find that Defendant was not entitled to an entrapment instruction, we reject Defendant's argument.

38. Even if Defendant were entitled to an entrapment instruction, his claim of fundamental error would fail. Defendant directs us to *State v. Osborne*, 111 N.M. 654, 656, 808 P.2d 624, 626 (1991), for the proposition that the district court's failure to instruct the jury on the essential elements of an offense constitutes fundamental error. He argues that "[a]lthough, strictly speaking, the affirmative defense of entrapment is not an 'element' instruction, it was certainly essential to the Defendant's defense in this case and was perhaps more critical than the elements instruction to the Defendant's defense." This issue was before the Court in *State v. Savage*, 115 N.M. 250, 254, 849 P.2d 1073, 1077 (Ct.App.1992), *cert. quashed*, 115 N.M. 409, 852 P.2d 682 (1993). The defendant in *Savage* argued that, although trial counsel did not tender an entrapment instruction, the district court had a duty to give the instruction to the jury because it had "been alerted to this line of defense." *Id.* This Court held that "entrapment is an affirmative defense. Its absence is not an element of the offense. There is no issue essential to conviction on which the district court failed to instruct the jury." *Id.* Therefore, under *Savage*, the district court did not err by failing to instruct the jury on entrapment.

## CONCLUSION

39. The judgment of the district court as to Count I is reversed and remanded for a new trial consistent with this opinion. We affirm the judgment of the district court as to Counts II and III.

40. **IT IS SO ORDERED.**

APODACA, C.J., and BUSTAMANTE, J., concur.