This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                **NO. 29,957**

**RICARDO CRUZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant Ricardo Cruz appeals his metropolitan court convictions for aggravated driving under the influence of an intoxicating liquor (DWI), reckless driving, and leaving the scene of an accident. On appeal, Defendant argues that (1) the metropolitan court committed fundamental error in failing to suppress evidence regarding a showup identification and a subsequent in-court identification by a witness, or (2) alternatively, if the admission of evidence regarding the showup identification was not fundamental error, defense counsel's failure to file a motion to suppress the evidence was ineffective assistance of counsel, and (3) there was insufficient evidence to support Defendant's convictions. We affirm.

**BACKGROUND**

This case arose out of a hit and run accident that took place on February 8, 2007. Around 4:00 p.m., Defendant and a coworker, Dean Martinez, left work and went to a nearby restaurant. Defendant and Martinez were at the restaurant for about two and one-half hours, and each consumed about four sixteen-ounce beers. They left the restaurant in a truck shortly before 7:00 p.m. There is a dispute as to who was driving the truck. Defendant maintains that the truck belonged to Martinez, that he was the passenger, and that he fell asleep in the truck after leaving the restaurant. Regardless of who was driving, Defendant and Martinez went to another bar.

While heading to the bar, the truck struck the rear of a Ford Explorer, driven by Arturo Casas (Mr. Casas), as the Explorer was pulled over to the side of the road while Mr. Casas answered his cell phone. Mr. Casas' wife, Monica Casas (Mrs. Casas), and their two children were passengers in the Explorer. After hitting the Explorer, the truck did not stop. Mr. Casas called the police and followed the truck in order to determine its license plate number. While Mr. Casas was following the truck, the truck stopped, its driver turned around to face the Explorer, and he attempted to back the truck into the front of the Explorer. Mr. Casas put the Explorer in reverse and drove backward in order to prevent being hit by the truck a second time. During this time, Mr. Casas was on the phone with the police, and the operator advised that Mr. Casas stop following the truck. Mr. Casas pulled into a nearby gas station and saw the truck park across the street in front of a bar. Defendant and Martinez exited the truck and entered the bar. The Casas family waited at the gas station for the police to arrive on the scene.

Officer Joan Marentes responded to a dispatch about a possible hit and run accident and accompanying road rage incident and arrived at the gas station to interview the Casas family. After speaking with the Casas family, she saw a truck fitting the description provided in the dispatch parked in front of the bar. Officer Marentes and two supporting officers entered the bar and approached the table where

3

Defendant and Martinez were seated. Officer Marentes told the men that she needed to speak to them about the truck, and Defendant asked, "which one?" Officer Marentes responded "the one parked outside," and Defendant immediately became verbally abusive and combative. The three officers "physically" escorted Defendant out of the bar. While outside the bar, Defendant became physically combative, and the three officers had to "restrain" him. Officer Marentes questioned Defendant about the truck, and Defendant stated that the truck was his. Officer Marentes determined that the truck was registered to Defendant's grandmother according to MVD records accessed through her computer. Defendant refused field sobriety tests.

While outside the bar, the officers identified Defendant as the driver of the truck using a procedure known as a showup identification. Officer Marentes asked a supporting officer to bring Mr. Casas to where Defendant and Martinez were present. Officer Marentes told the officer to stay a "distance away" so that Defendant and Martinez could not see Mr. Casas, but close enough to where Mr. Casas could see Defendant and Martinez. It was dark, and Officer Marentes testified that some type of lights were used to aid Mr. Casas in seeing the suspects. The officers then asked Mr. Casas which of the two men was the driver of the truck. Mr. Casas identified Defendant as the driver. Mr. Casas testified that he identified Defendant as the driver because he remembered his face from when the driver turned toward the Explorer

4

when the truck attempted to back into the Explorer. He further testified that it was not dark when the driver turned around and that he had his headlights on. He also testified that he saw the men exit the truck and enter the bar from across the street.

Mrs. Casas did not participate in the showup identification outside of the bar and remained at the gas station with the children while Mr. Casas identified Defendant as the driver. However, she did testify at trial and identified Defendant as the driver of the vehicle based on seeing his face and clothing when the driver turned toward the Explorer and attempted to back into the Explorer. Mrs. Casas stated that Defendant's truck was a single cab truck without tinted windows, and she therefore had no trouble seeing the driver.

Both Mr. and Mrs. Casas testified that the driver of the truck wore a red shirt and the passenger wore a blue shirt at the time of the accident. However, Mr. Casas testified that Defendant and Martinez switched shirts and hats between the accident and the showup identification. Defendant testified that he was wearing a red and white shirt when he was arrested and that he did not switch shirts or hats with Martinez.

Defendant was convicted of (1) aggravated DWI, contrary to NMSA 1978, Section 66-8-102 (2010); (2) reckless driving, contrary to NMSA 1978, Section 66-8-113 (1987); and (3) leaving the scene of an accident, contrary to NMSA 1978, Section

66-7-202 (1978). In this appeal, Defendant argues that (1) the metropolitan court committed fundamental error in failing to suppress all evidence resulting from the showup identification, (2) alternatively, defense counsel's failure to file a motion to suppress or object to testimony regarding the showup identification was ineffective assistance of counsel, and (3) there was insufficient evidence without the showup identification to find that Defendant was the driver of the truck, which was an essential element of all three convictions.

**SHOWUP IDENTIFICATION**

**Standard of Review**

Defendant argues that the metropolitan court erred in failing to suppress all evidence regarding the showup identification, or, alternatively, defense counsel's failure to file a motion to suppress or object to testimony regarding the showup identification was ineffective assistance of counsel. Defendant concedes that the issue of whether the showup identification was proper was not raised in the metropolitan court, and we therefore only review for fundamental error. *See State v. Davis*, 2009-NMCA-067, ¶ 7, 146 N.M. 550, 212 P.3d 438. Fundamental error is error that goes to the foundation of the case or implicates a right so essential to the defense that no court should permit the defendant to waive. *State v. Johnson*, 2010-NMSC-016, ¶ 25, 148 N.M. 50, 229 P.3d 523. "Fundamental error only applies in exceptional

circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *Id.* (internal quotation marks and citation omitted). "We review claims of ineffective assistance of counsel de novo." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057.

**Admissibility of Showup Identification**

We first review whether evidence regarding Mr. Casas' showup identification and subsequent in-court identification was admissible and, if not, determine whether its admission was fundamental error or whether counsel's failure to file a motion to suppress was ineffective assistance of counsel. Generally, the reliability of an identification is a due process requirement. *State v. Johnson*, 2004-NMCA-058, ¶ 13, 135 N.M. 567, 92 P.3d 13. When reviewing the admissibility of an identification, we determine whether (1) the procedure used was so impermissibly suggestive that there is a substantial likelihood of misidentification, and (2) if so, the identification is nonetheless reliable under the totality of the circumstances. *Id.*

Mr. Casas' identification of Defendant as the driver of the truck was impermissibly suggestive and therefore required sufficient indicia of reliability in order to be admissible. *See id.* Our Supreme Court has determined that "[s]howup identifications are inherently suggestive and should be avoided." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 21, 130 N.M. 179, 21 P.3d 1032 (internal quotation

7

marks and citation omitted). Indeed, New Mexico appellate courts have consistently held that showup identifications are impermissibly suggestive. *See id.* (holding that a showup identification was suggestive after police spotlighted the defendant with the headlights of a police vehicle to aid the witness identifications); *Johnson*, 2004-NMCA-058, ¶ 16 (holding that a showup identification was suggestive because the identification occurred immediately after the witnesses identified a vehicle implicated in the crime and therefore witnesses could have inferred that the defendant was the owner of the vehicle); *State v. Padilla*, 1996-NMCA-072, ¶ 20, 122 N.M. 92, 920 P.2d 1046 (holding that a showup identification was suggestive because police had witness identify the defendant as he sat in the back of a squad car). We therefore look to whether the showup identification of Defendant is nonetheless reliable under the totality of the circumstances. *Johnson*, 2004-NMCA-058, ¶ 13. In determining whether a showup identification is nonetheless reliable, "courts weigh the corrupting effect of the suggestive identification" against (1) the opportunity the witness had to view the perpetrator at the time of the offense, (2) the witness's degree of attention, (3) the accuracy of any description of the perpetrator before the identification, (4) the witness's level of certainty, and (5) the time elapsed between the offense and the identification. *Patterson*, 2001-NMSC-013, ¶ 20 (internal quotation marks and citation omitted).

The first, second, and third factors do not indicate reliability as to the showup identification. As to the first factor, the opportunity to view the perpetrator, Mr. Casas only saw the driver's face when the driver faced the Explorer at the time the truck stopped and attempted to back into the Explorer. There is no indication that this action took more than a few seconds and was not from a close enough distance to establish the reliability of the showup identification. *Cf. State v. Jacobs*, 2000-NMSC-026, ¶ 32, 129 N.M. 448, 10 P.3d 127 (holding that eyewitness identification was reliable when witnesses observed the perpetrator during a fifteen-minute car ride and spoke directly with the perpetrator before accepting a ride). Although Mr. Casas also testified that he saw the men exit the truck and enter the bar, he was across the street and therefore not necessarily sufficiently close to reliably distinguish between the driver and passenger. *See Johnson*, 2004-NMCA-058, ¶¶ 2, 18-19 (holding that the first factor did not indicate reliability when witness observed the perpetrator from a distance of 65-80 yards). As to the second factor, the witness's degree of attention, Mr. Casas testified that he called the police after the truck hit his Explorer and that he was on the phone with dispatch when the driver turned to face the Explorer. Further, Mr. Casas testified that he put the Explorer in reverse and drove backward in order to prevent getting hit by the truck. We therefore cannot say that Mr. Casas' degree of attention to the driver's face was unimpaired due to distractions. As to the third

factor, the accuracy of any pre-identification description, Mr. Casas only provided a general description of the vehicle, the license plate, and the occupants as "two hispanic males," but there is no indication that he gave a description differentiating between the driver and the passenger before the showup identification. There was therefore no pre-identification description to indicate reliability. *See Johnson*, 2004-NMCA-058, ¶¶ 21-22 (holding that there is no indication of reliability from a very general description of the perpetrator and that more descriptive testimony at the hearing was not factored into the pre-identification description factor).

The fourth factor, the certainty of the witness, weighs in favor of reliability. Mr. Casas testified that he was certain that Defendant was the driver, and Officer Marentes testified that Mr. Casas "positively identified" Defendant as the driver. The fifth factor, the time elapsed between the accident and the showup identification, also weighs in favor of reliability. Defendant concedes that "the time elapsed between the crime and the showup identification . . . was relatively short, possibly less than one hour[.]"

Weighing these five factors against the inherent suggestiveness of the showup identification, we conclude that the showup identification was impermissibly suggestive and should not have been admitted into evidence. The short time frame between the offense and the identification and Mr. Casas' certainty are not sufficient

to outweigh the inherent suggestiveness, the lack of opportunity by Mr. Casas to see the driver's face during the offense, and the impaired attention on the driver due to distractions. However, as determined, Defendant failed to preserve this argument in the metropolitan court, and we will only overturn Defendant's conviction if the admission was fundamental error.

**Fundamental Error**

As noted, we will only resort to fundamental error when "guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *Johnson*, 2010-NMSC-016, ¶ 25 (internal quotation marks and citation omitted). "If there is substantial evidence . . . to support the verdict of the jury, we will not resort to fundamental error." *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970). Substantial evidence exists where the evidence adequately supports a conclusion to a reasonable mind. *State v. Maes*, 2007-NMCA-089, ¶ 12, 142 N.M. 276, 164 P.3d 975. We view the evidence in the light most favorable to the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict. *Id.*

The only contested element of each of the three convictions was whether Defendant was the driver of the truck. Even without the impermissibly suggestive showup identification and subsequent in-court identification, there is substantial evidence to support a jury finding that Defendant was the driver of the truck. First,

11

there was alternative direct evidence from the in-court identification by Mrs. Casas, who was not involved in the improper showup identification. She testified that she clearly saw the driver's face when the truck attempted to back into the Explorer and it was unquestionably Defendant. Mrs. Casas also testified that the driver was wearing a red shirt, and Defendant testified that he wore a red shirt when arrested. Additionally, Mrs. Casas testified that the driver of the truck had darker skin than the passenger, and Defendant testified that he had darker skin than Martinez. Second, there was circumstantial evidence to support a verdict that Defendant was the driver. Officer Marentes testified that Defendant admitted that the truck was his and that the truck was registered to Defendant's grandmother according to MVD records.

Defendant points out conflicting evidence, such as Officer Marentes' testimony that Martinez handed her the keys to the truck while outside the bar, and Mr. Casas' testimony that the driver was wearing a red shirt but switched shirts with the passenger in the bar, yet Defendant was wearing a red shirt when arrested. However, it is for the factfinder to resolve any conflicts in witness testimony and determine weight and credibility. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482. Because there is substantial evidence to support the jury's conclusion that Defendant was the driver of the truck, even without the improper showup identification or subsequent in-court identification by Mr. Casas, the error in admitting

testimony regarding the identifications was not fundamental error. *See Rodriguez*, 81 N.M. at 505, 469 P.2d at 150 ("If there is substantial evidence . . . to support the verdict of the jury, we will not resort to fundamental error."); *see also Johnson*, 2010-NMSC-016, ¶ 25 ("Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." (internal quotation marks and citation omitted)).

**Ineffective Assistance of Counsel**

Alternatively, Defendant argues that, if the improper identification does not rise to the level of fundamental error, he received ineffective assistance of counsel because defense counsel did not move to suppress the improper identification. In order to establish a prima facie case of ineffective assistance of counsel, a defendant must show that (1) "defense counsel's performance fell below the standard of a reasonably competent attorney," and (2) the deficient performance prejudiced the defense. *Patterson*, 2001-NMSC-013, ¶ 17 (internal quotation marks and citation omitted).

In determining whether failure to file a motion to suppress a showup identification falls below the performance of a reasonably competent attorney, we look to whether (1) there are sufficient facts to support a motion to suppress the showup identification, and (2) whether a reasonably competent attorney could have decided that the motion was unwarranted. *Id.* ¶ 19. As we have determined, the

13

showup identification was unfairly suggestive and did not bear indicia of reliability that outweighed the inherent suggestiveness. Therefore, there are sufficient facts to support a motion to suppress the showup identification. We assume that "[t]here was no strategic reason for a reasonably competent attorney who was aware of the facts of this case and the governing case law not to try to suppress the showup identification[]," especially considering that the identity of the driver was a contested issue and an element necessary to convict Defendant of all three crimes charged. *Id.* ¶ 27 (holding that a reasonably competent attorney would have filed a motion to suppress a showup identification that was a "vital part of the [s]tate's case against [the p]etitioner").

We thus turn to whether defense counsel's deficient performance prejudiced Defendant's defense. In order to satisfy the prejudice prong, Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* ¶ 28 (internal quotation marks and citation omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted).

In arguing prejudice, Defendant cites *Patterson*, in which our Supreme Court held that counsel not filing a motion to suppress an improper showup identification

after an armed robbery prejudiced Defendant's defense. *Id.* ¶¶ 4, 28-33. However, *Patterson* is distinguishable. In *Patterson*, the Court reasoned that the "key issue was the identity of the perpetrator." *Id.* ¶ 32. There was inconsistency regarding the description of the perpetrator by four eyewitnesses, many of the descriptions did not accurately match the defendant's physical characteristics, and the state lacked other evidence that would identify the defendant as the perpetrator. *Id.* The Court therefore concluded that the state's case would have been "dramatically" weakened without the showup identification. *Id.* In our case, as we determined, there was both alternative direct evidence and circumstantial evidence that Defendant was the driver of the truck in the form of Mrs. Casas' and Officer Marentes' testimony.

This Court's decision in *Padilla* aids in our analysis. In *Padilla*, the defendant was charged with burglary after items were stolen from a used car lot. *Padilla*, 1996-NMCA-072, ¶ 2. A witness called police after seeing the perpetrator leave the lot and head toward a railroad overpass. *Id.* The defendant was arrested after police found him by the railroad overpass with stolen goods from the lot in his possession. *Id.* This Court determined that a showup identification by the caller was unreliable and assumed that effective counsel would have moved to suppress the identification. *Id.* ¶ 21. However, this Court affirmed the defendant's convictions, holding that he failed to establish prejudice. *Id.* ¶ 22. In concluding that the defendant failed to establish

15

prejudice, the Court noted that the defendant was caught in the area of the burglary where the eyewitness indicated the perpetrator would be, in the appropriate time frame, and in possession of stolen property. *Id.* The identification, although the only direct evidence, was "merely cumulative," and the circumstantial evidence was "persuasive corroborating evidence upon which a jury could reasonably rely to convict." *Id.* In this case, as in *Padilla*, while Mr. Casas' identification and subsequent in-court identification was strong direct evidence, it was "merely cumulative" of Mrs. Casas untainted in-court identification and circumstantial evidence from Officer Marentes' testimony. *See id.* Defendant therefore does not satisfy the prejudice prong and fails to make a prima facie showing of ineffective assistance of counsel.

Although Defendant has not made a prima facie showing of ineffective assistance of counsel on the record in this appeal, nothing precludes him from filing a petition for habeas corpus raising an ineffective assistance of counsel claim. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31.

**SUFFICIENCY OF THE EVIDENCE**

Defendant also argues that there was insufficient evidence for the jury to find beyond a reasonable doubt that he was the driver of the truck, which is an essential element of all three convictions. However, as we determined in our fundamental error

analysis, even without Mr. Casas' improper showup identification and subsequent in-court identification, sufficient evidence supported Defendant's convictions.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**