**Certiorari Denied, No. 31,512, February 11, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-030**

**Filing Date: December 29, 2008**

**Docket No.   27,597**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**ERNIE LEYBA,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Peggy Nelson, District Judge**


Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary A. Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**VIGIL, Judge.**

**{1}**     The State entered into a plea and disposition agreement with Defendant and agreed not to bring habitual offender proceedings "if and only if" Defendant completed at least one year of inpatient alcohol treatment and successfully completed probation without a violation. Defendant violated his probation one month after beginning to serve his probation, and he

1

admitted to the violation. The State did not bring habitual offender proceedings based on the violation, and the district court gave Defendant a second chance at probation. The State subsequently filed a motion to revoke probation, asserting that Defendant violated his probation a second time. The State also initiated habitual offender proceedings because Defendant had already admitted to the first probation violation, and it occurred within one year of the plea and disposition agreement. Without a finding that Defendant committed a second probation violation, the district court held a trial on the State's supplemental habitual offender information and enhanced Defendant's original sentence. Defendant appeals. We affirm.

## BACKGROUND

**{2}** In June 2004, a four-count information charged Defendant with the felony offenses of burglary, attempted burglary of a dwelling house, battery upon a peace officer, and possession of burglary tools. The case was resolved when Defendant entered into a plea and disposition agreement with the State, which the district court approved in July 2004. Defendant agreed to plead guilty to battery upon a peace officer, and the State agreed to dismiss the remaining three charges and not bring habitual offender proceedings for the three prior convictions "IF AND ONLY IF [Defendant] completes *at least one year* of inpatient alcohol treatment, and successfully completes probation without violation." Defendant signed the plea and disposition agreement acknowledging that he read and understood its terms.

**{3}** In its July 2004 judgment and suspended sentence, the district court adjudged Defendant guilty of battery upon a peace officer, sentenced Defendant to the Department of Corrections for eighteen months, and suspended execution of the sentence subject to standard and special supervised conditions of probation. Pertinent to this case, one of the special conditions of probation was that "[D]efendant shall enroll in, enter and successfully complete an inpatient alcohol and/or drug treatment facility *of at least twelve months' duration*, immediately upon his release from jail following the plea and sentencing in this matter. Defendant shall abide by all rules and regulations of said program as a condition of his probation." Defendant also signed the order of probation dated July 14, 2004, and placed his initials beside each condition, stating that he read and understood the terms of the probation order and agreed to abide by its terms. Defendant specifically acknowledged that as a special condition of his probation, "I will enter, participate, and complete the Opportunity House, inpatient program located at Hobbs, NM for a period of at least twelve (12) [months] in duration, immediately upon my release from jail following the plea and sentencing in this matter. I [shall] abide by all rules and regulations of said program as a condition of my probation."

**{4}** Defendant violated his probation the following month. The State filed a motion to revoke probation alleging that Defendant violated the aforementioned special condition, "in that on or about August 12, 2004, [Defendant] was terminated from [the Opportunity House P]rogram for program violations." In October 2004, the district court held a hearing, and

2

after consulting with his attorney, Defendant admitted in a probation violation agreement that he violated his probation as alleged. At the hearing, the district court first determined that Defendant was aware of his constitutional rights and agreed to waive them and then determined that Defendant knowingly, voluntarily, and intelligently agreed to admit that he violated his probation. The district court then formally accepted Defendant's admission that he violated his probation.

{5}     In its October 2004 order, the district court revoked Defendant's probation. However, instead of ordering Defendant to serve the balance of his sentence in prison, the district court reinstated Defendant's original eighteen-month suspended sentence.  Probation was reinstated for eighteen months, commencing on the date that the July 2004 judgment and suspended sentence was imposed, with the requirement that Defendant "abide by all conditions imposed therein," with credit for the time already served on probation.  The district court wanted Defendant to have another opportunity to receive counseling and treatment.  Again, a special condition of probation in this order was that "Defendant shall enter and successfully complete an in-patient alcohol/substance abuse program (of at least one year duration–currently planned as Recovery House or Sept House), immediately upon acceptance into the program and a bed being found for [Defendant]."

{6}     On January 6, 2005, the State filed a second motion to revoke probation, alleging that in November 2004, Defendant had violated four different conditions of his probation in that he was discharged from the Recovery House in Albuquerque for noncompliance with the program rules or directives; that he failed to comply with his Albuquerque probation officer's order to report to his Raton probation officer; that his whereabouts were unknown to probation authorities; and that he tested positive through urinalysis for marijuana and cocaine, and he admitted to using controlled substances.

{7}     Contemporaneous with the motion to revoke probation, the State also filed a supplemental information on January 6, 2005, alleging that Defendant was previously convicted of three other felonies, and that his sentence for the battery on a peace officer conviction should be enhanced pursuant to the Habitual Offender Act. *See* NMSA 1978, § 31-18-17(C) (2003) (providing that the basic sentence of a person convicted of a noncapital felony who has incurred three or more prior felony convictions shall be increased by eight years, which shall not be suspended or deferred).  Trial on the merits of the habitual offender supplemental information was scheduled prior to the hearing on the outstanding motion to revoke probation.

{8}     Trial on the habitual offender supplemental information commenced on April 5, 2005.  Defendant objected to having the habitual offender trial before the hearing on the second probation revocation.  Defendant argued that because he was reinstated to probation at the first revocation hearing without a habitual offender supplemental information being filed by the State at that time, the State waived its right to initiate habitual offender proceedings based on the first probation violation.  The State argued that it could proceed on the supplemental information based on Defendant's first probation violation, even though

3

the second probation revocation hearing was not scheduled.

{9}     The district court agreed with the State.  The district court stated, "I think even though the State did file a second motion to revoke probation, the first probation violation admission triggered the language of the original plea and disposition agreement.  And so the State can proceed with its supplemental information."  After hearing the State's evidence on Defendant's prior offenses, the district court found that Defendant had two prior felonies.  The district court subsequently filed a judgment, sentence and commitment on April 20, 2005, in which Defendant's original sentence was enhanced by four years, to be served concurrently with the original sentence of eighteen months in the Department of Corrections.  *See* Section 31-18-17(B) (providing that the basic sentence of  a person convicted of a noncapital felony who has incurred two prior felony convictions shall be increased by four years, which shall not be suspended or deferred).  The scheduled hearing on the outstanding motion to revoke probation was never held.

{10}     No direct appeal was filed, but Defendant was subsequently allowed to pursue an appeal to this Court in 2007, after receiving habeas corpus relief based on the failure of trial counsel to file a direct appeal.

**DISCUSSION**

**I.     Habitual Offender Enhancement**

{11}     Defendant claims that the district court denied him due process by enhancing his sentence based on his admission that he violated his probation in the October 2004 probation violation agreement.  The general rule is that a prosecutor may seek habitual felony offender enhancement at any time following conviction and prior to the expiration of the period of incarceration and any parole or probation that follows that period.  *See State v. Freed*, 1996-NMCA-044, ¶ 8, 121 N.M. 569, 915 P.2d 325.  This discretion to seek habitual offender enhancement rests with the prosecutor  and is not restricted even where the prosecutor knows of prior felonies but chooses to delay seeking the enhancement.  *Id.*

{12}     The issue before us is whether the prosecutor was otherwise restricted from exercising her discretion to file the habitual offender supplemental information in April 2005.  Defendant makes three alternative arguments to support such a restriction.  First, Defendant argues that the State failed to prove that Defendant willfully violated the terms of the initial probation agreement.  We construe his argument as a contention that the October 2004 probation violation agreement was invalid, with the result that the restriction in the original plea agreement on any habitual offender enhancement remained intact.  Second, Defendant argues that, even if the probation violation agreement was valid, it should be interpreted to prohibit the State from filing the supplemental information.  Finally, Defendant claims that, even if the terms of the agreement permitted the State to file the supplemental information, the State's delay in doing so amounted to a waiver of this right.  We discuss each of these arguments in turn.

4

**A.      Enforceability of the Probation Violation Agreement**

**{13}**    As we interpret his argument, Defendant contends that the October 2004 probation violation agreement was invalid and therefore, could not be used to trigger the language in the original July 2004 plea agreement that would authorize the filing of the habitual offender supplemental information.  The October 2004 probation violation agreement contains no express limitation on the State's authority to bring the habitual offender charges. Defendant's arguments are based on his interpretation of comments made at the revocation hearing.  Defendant maintains that his strategy at the revocation hearing was to admit to a technical violation of probation, but not one that would be sufficient, in and of itself, to support a determination that a violation had occurred.  Defendant characterizes the district court's acceptance of his admission at the beginning of the revocation hearing as a "conditional acceptance," subject to reconsideration, and he claims that the court ultimately agreed with the argument he now makes on appeal that there was an insufficient showing of willfulness or that the violation was otherwise insufficient to support revocation.

**{14}**    The State responds to Defendant's arguments by correctly observing that Defendant has never previously sought to set aside the October 2004 probation violation agreement. As such, the State argues that Defendant has failed to preserve the issue.  *See State v. Hodge*, 118 N.M. 410, 414, 882 P.2d 1, 5 (1994) (observing that "a plea of guilty or nolo contendere, when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights, including the right to appeal").  Not only did Defendant fail to attack the October 2004 probation violation agreement prior to the hearing on the habitual offender supplemental information, but even at that hearing, defense counsel conceded to the district court that Defendant had admitted to the probation violation; defense counsel's sole argument was that the State had waived by inaction its right to seek the enhancement.

**{15}**    Notwithstanding Defendant's failure to preserve the alleged invalidity of the probation violation, we disagree with his characterization of those proceedings.  At the probation revocation hearing the court asked Defendant whether he was willing to make an admission, to which Defendant answered:  "I admit that I–I didn't complete the program, that's why I got thrown out.  So I'm admitting, yes, today, that I didn't complete the Opportunity House, the program."  In response to the district court, Defendant also stated that he was knowingly waiving applicable constitutional protections and rights.

**{16}**    For her part, defense counsel stated that Defendant was willing to admit to the violation, and she agreed with the court that the only issue concerned sentencing. Defendant claims that this merely amounts to argument of counsel.  *See State v. Cochran*, 112 N.M. 190, 192, 812 P.2d 1338, 1340 (Ct. App. 1991) ("Argument of counsel is not evidence."). However, this claim overlooks Defendant's own statement to the court that he was admitting to the State's allegation that he was terminated from the Opportunity House program.

5

**{17}**   Defendant's primary contention is that there was no showing that his conduct to support the violation was willful. *See State v. Martinez*, 108 N.M. 604, 606-07, 775 P.2d 1321, 1323-24 (Ct. App. 1989) (explaining that probation should not be revoked where the violation is not willful, in that it resulted from factors beyond a probationer's control). As we have already stated, the record supports the conclusion that Defendant knowingly and voluntarily admitted to the probation violation, and we are not inclined to address any additional alleged defect because Defendant never reserved the right to make this challenge by entering a conditional plea. *See Hodge*, 118 N.M. at 415-17, 882 P.2d at 6-8. This is not a situation where evidence used to support a plea compels us to set aside the plea agreement notwithstanding our limited review. *See State v. Nash*, 2007-NMCA-141, ¶¶ 10-19, 142 N.M. 754, 170 P.3d 533 (permitting successful collateral attack of a prior plea-based conviction where there was clear and convincing evidence of innocence). To the contrary, in the present case Defendant repeatedly stated that he was admitting to the violation. The defense strategy at the probation revocation hearing was, in effect, to admit to a willful violation of probation, but to minimize the seriousness of the violation for purposes of advocating for continued probation and treatment in another facility. Defendant's own witness, a social worker, testified that Defendant had otherwise been an exemplary participant in the Opportunity House program, and had left after being upset with the amount of money he was being paid. The witness quoted Defendant as saying, "this isn't working for me," which buttressed Defendant's own admission with respect to willfulness. In fact, this evidence of willfulness was used to support Defendant's request to be placed back on probation, because another facility might be better suited to his personality. Defendant's strategy succeeded, and he was placed back on probation.

**{18}**   Finally, Defendant argues that the district court implicitly determined that, while there was a technical violation, there was no actual violation. We believe that Defendant misconstrues the court's comments. At the end of the revocation hearing, after it had already accepted Defendant's admission of a probation violation, the district court simply articulated the reasons why it was agreeing to place Defendant back on probation. Moreover, the court's comment on Defendant's need for anger management treatment was an implicit reference to the reason for Defendant's violation, and additional comments support the view that the district court agreed with Defendant's own position that the violation was not so serious that another attempt at treatment should be foreclosed. Defendant's claim that the district court implicitly found that no violation occurred is also contradicted by the fact that the district court entered the order revoking Defendant's probation.

**B.   Interpretation of Probation Violation Agreement**

**{19}**   Defendant claims that, even if the October 2004 probation violation agreement is valid, it should be interpreted to prohibit the State from filing the supplemental information in this case. As we observed above, Defendant's argument at the hearing on the supplemental information was limited to waiver. Nevertheless, we consider Defendant's arguments with respect to the terms of the agreement, because if they did not authorize enhancement, then Defendant was subject to an illegal sentence. *See State v. Shay*,

6

2004-NMCA-077, ¶ 6, 136 N.M. 8, 94 P.3d 8 (stating the rule that an illegal sentence challenge does not have to be preserved); *cf. State v. Trujillo*, 2007-NMSC-017, ¶ 7-13, 141 N.M. 451, 157 P.3d 16 (rejecting illegal sentence preservation argument where—unlike the present case—there was no claim that the terms of the underlying plea prohibited habitual offender charges).

**{20}**  Plea agreements are binding upon the parties in the absence of a constitutional or statutory invalidity.  *See State v. Montaño*, 2004-NMCA-094, ¶ 7, 136 N.M. 144, 95 P.3d 1059.  Upon review, an appellate court "construe[s] the terms of the plea agreement according to what [the d]efendant reasonably understood when he entered the plea." *State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954.  Defendants do not get to choose which part of a plea bargain to follow; plea agreements are generally viewed and enforced in their entirety.  *See State v. Gibson*, 96 N.M. 742, 743, 634 P.2d 1294, 1295 (Ct. App. 1981).  With respect to ambiguities:

> [I]f the ambiguities are not addressed by the district court and there is no other relevant extrinsic evidence to resolve the ambiguity, the reviewing court may rely on the rules of construction, construing any ambiguity in favor of the defendant.  Under these circumstances, contract interpretation is a legal issue that this Court reviews de novo.

*Fairbanks*, 2004-NMCA-005, ¶ 15 (citation omitted).

**{21}**  In this case, the October 2004 probation violation agreement has the title, "Repeat Offender and Probation Violation Agreement."  The document itself states that Defendant agrees he was convicted of three prior felonies, but this provision and the information identifying the felonies were crossed out and initialed by the prosecutor. Defendant suggests this action constituted an agreement that no habitual offender sentence would be sought because of these three prior felony convictions. We disagree.  The fact that Defendant did not admit to being a habitual offender at that time does not control whether the State had authority to seek a habitual offender enhancement based on the previously admitted probation violation under the terms of the original July 2004 plea and disposition agreement. Defendant's argument is also undermined by the fact that there is no express language in the October 2004 probation violation agreement binding the State from subsequently seeking an enhanced sentence.  Given the terms of the original plea and disposition agreement, coupled with the State's broad discretion to seek habitual offender enhancement, the absence of any express language limiting this discretion demonstrates that no such agreement between the State and Defendant was reached.

**{22}**  To the extent that any ambiguity can be inferred by the crossed-out language in the October 2004 probation violation agreement, a full review of the transcript of the October 2004 hearing demonstrates that there was no dispute with respect to the probation violation, that the focus was on whether Defendant would be incarcerated or given another chance at probation and in-patient treatment, and that the State was willing to give Defendant this second chance.  The State's willingness to provide Defendant another opportunity would

have been meaningless if it would have sought habitual enhancement at that time, since "enhancement is mandatory if the prosecutor exercises discretion to pursue the enhancement." *Freed*, 1996-NMCA-044, ¶ 8; *see* § 31-18-17(C). Again, we emphasize that a prosecutor is not required to seek an enhancement simply because it has the authority to do so. *See Freed*, 1996-NMCA-044, ¶ 8. This explains why the prosecutor in this case specifically informed the district court that "today will not be the day for resolution of the supplemental information." It is clear from this and other similar statements by the prosecutor that the State was willing to see what treatment options were available, and revisit Defendant's prior felonies at another time, if necessary. Finally, Defendant may not rely on the absence of any resolution of the prior felonies in the October 2004 probation violation agreement to the subsequent filing of the habitual offender supplemental information. *See Trujillo*, 2007-NMSC-017, ¶ 12 (stating that a "plea agreement's silence on the subject of habitual-offender charges cannot inure to [a defendant's] benefit").

## C.    Waiver

**{23}**    We now consider the only argument that was actually made by Defendant at the hearing on the supplemental information:  that the State's failure to resolve the habitual offender issue at the probation violation hearing in October 2004 constituted a waiver of its right to subsequently file the supplemental habitual offender information.

**{24}**    Defendant's waiver argument is made in two respects. First, Defendant argues that the prosecutor's comments at the probation violation hearing, together with crossing out the language referencing prior convictions on the face of the written agreement amounted to a waiver of the express terms of the original plea. We have considered and resolved this argument above. Defendant's other waiver argument, which we now address, is his contention that the State waived its right to seek enhancement by failing to timely file the habitual offender supplemental information. Defendant refers us to *State v. Chavez*, 102 N.M. 279, 694 P.2d 927 (Ct. App. 1985), for support that the State was required to timely file the habitual offender supplemental information. However, that case addressed the reasonable time requirement between an alleged probation violation and the filing of a petition to revoke based on that conduct. *Id.* at 281, 694 P.2d at 929. Defendant's waiver argument has been specifically rejected by the Legislature because a prosecutor may bring habitual-offender charges at any time prior to limits that are not at issue here. *See Freed*, 1996-NMCA-044, ¶ 8 (noting that the Legislature has given its express approval of the initiation of habitual-offender proceedings after the imposition of the basic sentence).

**{25}**    Having determined that the probation violation was valid, that its terms supported the filing of the habitual offender supplemental information, and that waiver is inapplicable, we conclude that the district court was authorized to enhance Defendant's sentence.

## II.    Allocution

**{26}**    Defendant claims that the district court filed the judgment, sentence and commitment

8

following the trial on the habitual offender supplemental information in violation of his right to allocution. In *State v. Setser*, 1997-NMSC-004, ¶ 20, 122 N.M. 794, 932 P.2d 484 our Supreme Court stated:

Allocution is defined as the formal inquiry or demand made by the court or clerk to accused at the time for pronouncing sentence as to whether accused has anything to say why sentence should not be pronounced on him. In New Mexico, this common-law doctrine has been extended to non-capital felonies. This means that, at least in cases involving felony convictions, the trial judge must give the defendant an opportunity to speak *before* he pronounces sentence. Failure to do so renders the sentence invalid.

(internal quotation marks and citations omitted). In this case, Defendant was denied his right of allocution because further proceedings were anticipated on the second motion to revoke probation, but none took place. Instead, the district court filed the judgment, sentence and commitment approximately two weeks after the trial on the habitual offender supplemental information was held.

{27}    The State maintains that the right of allocution does not apply to habitual offender sentencing. The State's argument is based on the lack of the district court's sentencing discretion, because where the prior felonies are established, "the court shall sentence [the defendant] to the punishment as prescribed in Section 31-18-17." NMSA 1978, § 31-18-20(C) (1983). We believe that the State's outcome-based argument overlooks the fundamental due process underpinnings of this right. As our Supreme Court has observed, "[t]he right developed at a time when the criminal defendant had no right to counsel and no right to testify. Allocution was created so that a defendant would be aware of the single situation in which he could address the court. Although this is no longer the case, the right of allocution has remained a part of the common law." *Setser*, 1997-NMSC-004, ¶ 20 n.1 (citation omitted). We disagree with State's claim that allocution under these circumstances is essentially meaningless, because "the opportunity to personally address the sentencer retains both symbolic and practical significance. It may increase for some defendants the perceived equity of the process." 6 Wayne R. LaFave et al., Criminal Procedure § 26.4(g), at 780 (3d ed. 2007). Accordingly, we must remand for re-sentencing.

**CONCLUSION**

{28}    For the reasons set forth above, we conclude that the State was authorized to bring habitual offender charges against Defendant and affirm, but we remand for re-sentencing with Defendant present in open court where he is accorded his right to allocution.

{29}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

9

_____

**CYNTHIA A. FRY, Judge**


_____

**CELIA FOY CASTILLO, Judge**

**Topic Index for *State v. Leyba*, No. 27,597**

| CA | CRIMINAL PROCEDURE |
|---|---|
| CA-AC | Allocution |
| CA-ES | Enhancement of Sentence |
| CA-HC | Habitual Criminal |
| CA-PP | Plea and Plea Bargaining |
| CA-PB | Probation |
| CA-PU | Revocation of Probation |
| CA-WV | Waiver |