This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.               **NO. 32,025**

**RAUL ARREOLA,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Michael E. Martinez, District Judge Pro Tem**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}     The opinion filed in this case on January 23, 2014 is hereby withdrawn and the following substituted therefor. The motion for rehearing is denied.

{2}     Defendant Raul Arreola was originally charged by indictment with four counts of forgery of a credit card, theft of identity, and fraudulent use of a credit card. He entered into a repeat offender plea and disposition agreement, agreeing to plead guilty to one count of forgery of a credit card and theft of identity. The district court approved the agreement and entered its judgment and sentence, sentencing Defendant to incarceration for a term of four years, suspended three years of the sentence, and imposed a probation term of three years. Defendant admitted to violating his probation, and the district court revoked his probation and sentenced him to fifteen years incarceration based on the State's supplemental information requiring that Defendant's sentence be enhanced by two eight-year enhancements under NMSA 1978, Section 31-18-17(C) (2003) because he was an habitual offender. Defendant appeals from the district court's order revoking his probation and sentencing him to fifteen years.

{3}     On appeal, Defendant asserts that (1) the district court erred in ordering the habitual offender enhancements, (2) the district court erred by originally accepting Defendant's plea, (3) the performance of Defendant's original trial counsel constituted ineffective assistance of counsel, and (4) the district court erred by revoking the

2

probation rather than ordering that Defendant's underlying plea be withdrawn. Defendant's assertions principally relate to the provisions of the plea agreement.

{4}    In the plea agreement, in a section entitled "Admission of Identity," Defendant admitted that he was convicted of three prior felonies that were listed in the agreement. Defendant also admitted to the conviction of the felony listed in the State's supplemental information, and the plea agreement recited that Defendant would "therefore be sentenced as an habitual offender with one (1) prior conviction, and Defendant's sentence [would] be enhanced by one (1) year . . . of mandatory incarceration." Specifically as to the parties' agreement as to sentencing, the plea agreement states:

> This agreement is expressly conditioned upon . . . [D]efendant having the prior felony convictions listed. The State will agree at initial sentencing to waive one of . . . Defendant's two useable prior convictions, and [D]efendant will service [sic] one (1) year mandatary [sic] incarceration pursuant to the Habitual Offender Statute.

With respect to subsequent habitual offender proceedings, the plea agreement states that "Defendant understands that if Defendant violates any law after entering this plea and before completing the sentence in this case, Defendant will be subject to additional habitual offender proceedings based on the convictions listed under the section labeled 'Admission of Identity.'"

3

**ENHANCEMENT**

{5}    Defendant's first issue centers on his motion to enforce plea agreement that he filed prior to the hearing on his probation violation.  In his motion, Defendant argued, as he does on appeal, that he reasonably understood from the plain language of the plea agreement that he had only two useable prior convictions and that any ambiguity in the plea agreement must be construed in his favor.  The State argued in district court that there was no ambiguity in the plea agreement only a clerical error in the use of "two" in describing the number of prior felony convictions.  The district court agreed.

{6}    Plea agreements are binding upon the parties, absent constitutional or statutory invalidity.  *State v. Montaño*, 2004-NMCA-094, ¶ 7, 136 N.M. 144, 95 P.3d 1059.  They are a unique type of contract requiring approval of the district court.  *State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954.  If a defendant has fully complied with the agreement, the defendant may be entitled to specific performance of the plea.  *Cf. State v. Smith*, 1990-NMCA-082, ¶ 7, 110 N.M. 534, 797 P.2d 984 (doubting that the defendant would be entitled to specific performance if there had been a plea agreement under the circumstances presented). This Court will "construe the terms of the plea agreement according to what [the d]efendant reasonably understood" when entering the plea.  *Fairbanks*, 2004-NMCA-005, ¶ 15

4

(internal quotation marks and citation omitted). When ambiguities in a plea agreement are left unresolved by the district court, the "language in [a] plea agreement will be construed in favor of a defendant's reasonable understanding." *State v. Miller*, 2013-NMSC-048, ¶ 39, 314 P.3d 655.

{7}     To demonstrate his understanding of the plea agreement, Defendant points to the language "[t]he State will agree at initial sentencing to waive one of the Defendant's two useable prior convictions . . . ."  Defendant notes that Defendant admitted in the plea agreement to three prior felony convictions, but asserts that "he did *not* understand that he was facing sentences enhanced by three usable prior felonies" because the plea agreement clearly stated that he had only "two *useable* prior convictions."

{8}     While we observe that the plea agreement did not consistently refer to the number of Defendant's prior felony convictions and that the use of the term "useable" is not entirely clear, for the following three reasons, we do not consider the plea agreement, when reviewed in its entirety, to reasonably support Defendant's position. *See State v. Leyba*, 2009-NMCA-030, ¶ 20, 145 N.M. 712, 204 P.3d 37 (holding that plea agreements are to be viewed and enforced in their entirety, with ambiguities construed in favor of the defendant).

{9} First, the overall intent of the plea agreement negates Defendant's understanding. The plea agreement is entitled "Repeat Offender Plea and Disposition Agreement" and specifically addresses the consequences of a subsequent probation violation. Defendant admitted his identity in connection with the convictions for three distinct felonies. The plea agreement clearly states that "Defendant understands" that if he violates the law after entering the plea and before completing his sentence, he would "be subject to additional habitual offender proceedings based on the convictions" for which he admitted his identity.

{10} Second, although the use of the term "useable" is not defined in the plea agreement and may cause some level of confusion, it does not indicate, as Defendant intimates, that the three prior felony convictions for which he has admitted his identity may not justify sentence enhancement in a habitual offender proceeding. The plea agreement provides that the State "will use the Defendant's admission of identity to the prior felony convictions in any additional habitual offender proceedings." It further provides that "Defendant understands and agrees that the admission alone will be sufficient proof that Defendant is the person convicted of those felonies." Significantly, Defendant further agreed in the plea agreement to the validity of the listed prior convictions, including that they are free of constitutional violation, and to his waiver of any collateral attack upon or contest of the listed convictions. This case

6

is unlike *State v. Miller*, in which a defendant's sentence was vacated because the sentence was contrary to his reasonable understanding of a plea agreement with ambiguous provisions. *See Miller*, 2013-NMSC-048, ¶¶ 26-27. In *Miller*, our Supreme Court held that the defendant's understanding of a forty year maximum time of incarceration was reasonable when the plea agreement stated a "maximum sentence of 40 years at initial sentencing" and that "[t]he remaining two years of the 42 year exposure shall run concurrent with parole of two years" and a "maximum sentence of 40 years in the Department of Corrections at initial sentencing." *Id.* ¶ 3. Defendant's admission of three prior felonies in combination with the language indicating that his admissions would be used in additional habitual offender proceedings undermines the argument that Defendant had a reasonable understanding that under his plea agreement only two of his felonies would justify sentence enhancement in a habitual offender proceeding.

{11}     Third, the context of the language at issue indicates that it only applies at Defendant's initial sentencing and not to subsequent habitual offender proceedings. The entire sentence reads "[t]he State will agree at initial sentencing to waive one of the Defendant's two useable prior convictions, and [D]efendant will service [sic] one (1) year mandatary [sic] incarceration pursuant to the Habitual Offender Statute." The language then describes Defendant's probation and restitution terms. The

preceding paragraph concluded that "Defendant will therefore be sentenced as an habitual offender with one (1) prior conviction, and Defendant's sentence will be enhanced by one (1) year of mandatory incarceration." Thus, the subject matter of the provision that includes the language at issue only relates to the terms of Defendant's initial sentence. Moreover, there is no lack of clarity regarding those terms.

{12}    As a result, we cannot conclude that Defendant could have reasonably understood the plea agreement to indicate that the three prior felony convictions to which he admitted his identity would or could not be used in a later habitual offender proceeding. The district court did not err in the manner in which it enhanced Defendant's sentence.

**ACCEPTANCE OF UNDERLYING PLEA**

{13}    Rule 5-303(F) NMRA provides:

> The court shall not accept a plea of guilty or no contest without first, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands the following:
>
> (1) the nature of the charge to which the plea is offered;
>
> (2) the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered, including any possible sentence enhancements.

{14}    Defendant argues that the district court erred in taking Defendant's plea because it did not personally notify Defendant of the prospective penalties attached to his plea

8

and that the plea cannot therefore be considered to be knowing and voluntary. The State acknowledges that "the district court did not personally advise Defendant at his plea hearing that, if he violated the terms of his probation, the prior felony offenses that he was admitting to exposed him to a possible additional fifteen years of incarceration." Because Defendant did not move to withdraw his plea in the district court, we review whether there was fundamental error. *See State v. Sutphin*, 2007-NMSC-045, ¶ 10, 142 N.M. 191, 164 P.3d 72 (reviewing petition for writ of habeas corpus for fundamental error when the defendant did not raise the clerical error in the district court). To demonstrate fundamental error in connection with a guilty plea, Defendant must establish that (1) the error was clear and (2) the error clearly affected the outcome. *State v. Pacheco*, 2008-NMCA-059, ¶ 12, 144 N.M. 61, 183 P.3d 946.

{15} Our Supreme Court has held with respect to a prior version of Rule 5-303 that required the court to advise a defendant in order to determine whether a plea is voluntary that "absent a showing of prejudice to the defendant's right to understand his guilty plea and its consequences, substantial compliance with [the rule] is sufficient." *State v. Garcia*, 1996-NMSC-013, ¶ 12, 121 N.M. 544, 915 P.2d 300. It added: "Although the court must be certain the plea is knowing and voluntary, it is more reasonable to require substantial compliance rather than to require the trial

9

courts to strictly adhere to a script." *Id.* In connection with the requirement that the defendant understand the nature of the charges in that case, the Court held that "provided the record shows the defendant had the requisite information, the court need not be the only source of that information." *Id.* ¶ 17.

{16} *Marquez v. Hatch*, 2009-NMSC-040, 146 N.M. 556, 212 P.3d 1110, involved Rule 5-303(F) prior to the amendment that added the specific requirement that the court advise a defendant of "any possible sentencing enhancements" as part of its advice regarding maximum possible penalties. *See* Rule 5-303(F)(2) NMRA (2009). The Court held that "when a defendant's plea will most certainly result in an immediate sentence enhancement because of the defendant's prior convictions, the district court must advise the defendant of such likelihood before accepting the plea." *Marquez*, 2009-NMSC-040, ¶ 12. Defendant's habitual enhancement was not of such an immediate consequence on Defendant's initial sentence. The plea agreement called for Defendant to be sentenced as an habitual offender with one prior conviction for a one-year enhancement. Any later enhancement for a probation violation would depend on Defendant's subsequent acts that were only speculative at the time of Defendant's plea. In addition, the Court in *Marquez* acknowledged that "there exists a right to assume that defendants will not be guilty of a subsequent offense." *Id.* (internal quotation marks and citation omitted). It further stated that "[i]deally, the

sentencing information should come from the judge, but the plea nevertheless may be knowingly, voluntarily, and intelligently made if the defendant is aware of the correct information from other sources" and observed that an attorney's advice about the sentence a defendant faced prior to entering a plea may be sufficient to demonstrate that the defendant understood the plea even if the court's advice was vague and contradictory. *Id.* ¶¶ 6, 16.

{17}     Although the district court did not personally advise Defendant of the maximum potential consequences of a subsequent probation violation, Defendant's counsel represented to the district court, upon the district court's inquiry, that Defendant had "been advised of the contents of the supplemental information and the penalty." Although Defendant has asserted that his counsel did not provide him such advice, his assertions do not demonstrate clear or fundamental error.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

{18}     Defendant additionally argues that his original trial counsel failed to meet the constitutional standards of effective assistance. Specifically, Defendant contends that his attorney inadequately advised him "while taking the plea" and "stood by silently and allowed it to happen."

{19}     Defendant has the burden of establishing a prima facie case of ineffective assistance of counsel. To do so, he must demonstrate that (1) "counsel's performance

fell below that of a reasonably competent attorney" and (2) Defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729.

{20} Defendant has not demonstrated that his attorney acted in less than a reasonable manner. Defense counsel waived the reading of the supplemental information. When asked by the court whether Defendant had "been advised of the contents of the supplemental information and penalty," he responded affirmatively. Defendant does not assert that his attorney should not have waived the reading. He does assert that, contrary to his representations to the court, his attorney did not properly instruct him as to the consequences of the plea, but this assertion does no more than raise a question of fact that does not constitute a prima facie showing. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (stating that when the facts necessary for a full determination of an ineffective assistance of counsel claim are not part of the record or appeal, the claim is more properly brought as a habeas corpus proceeding). The appropriate venue to raise an ineffective assistance of counsel claim when a record must be established is a habeas corpus proceeding. *State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31.

**COURT FAILURE TO REVERSE PLEA AGREEMENT**

{21} Citing *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant argues that the judge at the probation revocation hearing erred by failing to order the underlying plea withdrawn. Defendant did not make such a request and, as a result, he contends on appeal that the judge's failure to act sua sponte was fundamental error. Fundamental error is such an error that either "goes to: (1) the foundation of a defendant's rights, (2) the foundation of the case, or (3) a right essential to the defense of an accused, which no court could or ought to permit him to waive." *Campos v. Bravo*, 2007-NMSC-021, ¶ 18, 141 N.M. 801, 161 P.3d 846 (internal quotation marks and citation omitted).

{22} As we have previously discussed, although the judge accepting Defendant's plea did not personally address Defendant, the judge inquired, and was informed by counsel, that Defendant knew the contents of the supplemental information and the penalty attached to his plea. Defendant disputed his attorney's representation at the probation revocation hearing, but he did not raise this factual issue in a motion that would enable the district court to address it. On the record before this Court, there is no fundamental error.

**REMAND FOR RESENTENCING**

13

**{23}** In its answer brief, the State raises an issue concerning the district court's exercise of its discretion when resentencing Defendant after his probation revocation. We address the issue because it involves the potential of fundamental error arising from the district court's misapprehension of the law.

**{24}** Following the plea agreement, the district court originally sentenced Defendant to serve eight years for each of the two fourth-degree felonies that were the subject of the plea. The sentences were to be served consecutively and were suspended subject to Defendant's satisfactory performance of the terms and conditions of his probation. At the sentencing after the probation revocation, the district court indicated its belief that Defendant's exposure as an habitual offender was sixteen years. The district court, however, later stated: "if I had discretion on this, I probably wouldn't have imposed more than four. But I think the law is real clear on that."

**{25}** This Court has since clarified the law, holding that when resentencing an offender after a parole violation, the court has the discretion to order the habitual offender enforcement be served concurrently, even though the court originally ordered the underlying sentences to run consecutively. *State v. Triggs*, 2012-NMCA-068, ¶¶ 17, 19-20, 281 P.3d 1256. We see no basis to treat a probation violation differently. Because the district court appeared to have misunderstood the law as clarified in *Triggs*, we remand to the district court for resentencing.

# CONCLUSION

{26}    We affirm the district court's order revoking probation and sentencing except with respect to the term of the sentence.  In that regard, we remand for resentencing based on *Triggs*.

{27}    **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**CYNTHIA A. FRY, Judge**