STATE V. MCBRIDE

This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**TRENEESHIA MCBRIDE,**
**Defendant-Appellant.**

No. A-1-CA-35306

COURT OF APPEALS OF NEW MEXICO

February 7, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Mark A. Macron, District Judge Pro Tempore

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Walter M. Hart, III, Assistant Attorney General, Albuquerque, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Tania Shahani, Assistant Appellate Defender, Santa Fe, NM, for Appellant

**JUDGES**

LINDA M. VANZI, Judge. WE CONCUR: KRISTINA BOGARDUS, JUDGE, JACQUELINE R. MEDINA, JUDGE

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Defendant Treneeshia McBride appeals the district court's enhancement of her sentence, arguing that, although it was consistent with her 2008 plea agreement, the

enhancement was barred by a 2009 verbal agreement with the State. Defendant also argues that the prior felony convictions did not fall within the statute providing for habitual offender enhancements and that there was insufficient evidence that she violated the conditions of probation. We affirm.

## BACKGROUND

**{2}**    Defendant's arguments are based on the following sequence of events.

## I.    THE 2008 PLEA AGREEMENT

**{3}**    In 2008 Defendant executed a "Repeat Offender Plea and Disposition Agreement" (the 2008 Plea Agreement) in which she agreed to plead guilty to two counts of false imprisonment and two counts of aggravated battery resulting in great bodily harm in exchange for basic sentences totaling nine years.

**{4}**    In addition, Defendant admitted that she had been convicted of four other felonies in 1999, 2000, and 2003, including shoplifting over $250, trafficking of cocaine by distribution, tampering with evidence, and aggravated battery with a deadly weapon. Defendant's prior felonies exposed her to enhanced habitual offender sentences pursuant to NMSA 1978, § 31-18-17(C) (2003), which provides that a "basic sentence shall be increased by eight years" when a defendant "has incurred three or more prior felony convictions." Hence, Defendant faced potential habitual offender enhancements of eight years for each charge to which she pled guilty, i.e., thirty-two years. *See State v. Howard*, 1989-NMCA-029, ¶ 17, 108 N.M. 560, 775 P.2d 762 ("If a person with a prior felony conviction is convicted of multiple felonies, then there are several basic sentences. Thus, there may be multiple enhancements."). Despite this exposure, the State agreed to an enhancement of only one year based on Defendant's admission that she was convicted of aggravated battery with a deadly weapon in 2003. This one-year habitual offender enhancement brought Defendant's total prison sentence under the 2008 Plea Agreement to ten years.

**{5}**    Although the 2008 Plea Agreement provided for a habitual offender enhancement of only one year, it also provided that Defendant could be subject to additional habitual offender enhancements if Defendant violated the conditions of probation or any other law. Specifically, it provided that "[i]f . . . Defendant later violates [her] probation, she could do the balance of the sentence and the State may bring additional [h]abitual [o]ffender enhancements as [to] each felony [c]ount." Additionally, it provided that:

> [D]efendant understands that if she violates any law after she enters this plea and before she completes her sentence in this case, she will be subject to additional habitual offender proceedings based on the convictions listed [in the 2008 Plea Agreement]. The State also may bring additional habitual offender proceedings if the defendant violates any condition of probation or parole. The State may bring additional habitual offender proceedings if the violation is

admitted or proven, even if probation or parole is not revoked or [D]efendant is not convicted of the new crime.

**{6}** After a hearing in June 2008, Defendant was sentenced in accordance with the 2008 Plea Agreement to a term of ten years, of which eight were suspended, with two years to be spent incarcerated. The district court ordered four years of supervised probation following incarceration. However, due to pre-sentence confinement credit, Defendant's probation began shortly after the 2008 hearing.

## II.     The 2009 Probation Revocation and Second Enhancement of Sentence

**{7}** In 2009, the State moved to revoke Defendant's probation. At the hearing on the motion, the State informed the district court that Defendant faced the immediate potential for thirty-one additional years of habitual offender enhancements, and that Defendant had rejected the State's offer of an eight-year enhancement for the probation violations at issue. As the State was describing Defendant's probation violations, counsel for Defendant interjected to ask for a recess. After the recess, the parties informed the district court of their agreement that Defendant would admit to the probation violation and the State would seek a habitual offender enhancement of eight years for one of the 2008 false imprisonment counts. The substance of this verbal agreement (the 2009 Verbal Agreement) between the State and Defendant is the crux of Defendant's arguments.

**{8}** The district court sentenced Defendant to eighteen years, stating in a written order, "Defendant was originally sentenced to ten (10) years on June 10, 2008. Defendant's sentence for false imprisonment, as charged [in] . . . the original indictment in this matter, was enhanced by eight years of mandatory incarceration pursuant to [Section] 31-18-17." After calculating Defendant's confinement credits, the district court committed Defendant to the Department of Corrections for a confinement of 2630 days and sentenced her to three years of probation and one year of parole. Defendant began her probationary term in March 2014.

III.     The 2015 Probation Revocation and Third Enhancement

**{9}** In 2015, the State moved to revoke Defendant's probation for battery against Karim Cunningham and Janelle Martinez. An evidentiary hearing on the State's motion was held over four days and the district court found that the State had met its burden to show that Defendant had violated the terms of her probation by committing battery against Cunningham and Martinez. Additional facts related to the sufficiency of the evidence are included in our discussion of Defendant's arguments below.

**{10}** The day after the district court stated its findings, the State filed a supplemental information in which it sought an additional eight-year habitual offender enhancement of Defendant's sentence. At a hearing on the supplemental information, Defendant argued that any additional enhancement was contrary to the 2009 Verbal Agreement and moved to dismiss the supplemental information.

**{11}** The district court denied Defendant's motion and concluded that "Defendant's exposure at sentencing is the remaining underlying time . . . (three years less probation credit from March 21, 2014) and one eight[-]year habitual offender enhancement on the remaining [f]alse [i]mprisonment conviction." It revoked Defendant's probation and sentenced her to eight years of incarceration. Defendant appeals the eight-year habitual offender enhancement.

## DISCUSSION

**{12}** Defendant makes three arguments. First, she argues that the evidence was insufficient to support the district court's 2015 finding that she violated her probation. Second, she maintains that the district court's decision to enhance the 2015 sentence was contrary to the 2009 Verbal Agreement. Finally, she argues that the 2015 enhancement of her sentence was illegal because the prior felony convictions on which the enhancement was based were more than ten years old.

## IV. There Was Sufficient Evidence to Support the Probation Violation

**{13}** "A violation of the conditions of probation must be established with such reasonable certainty as to satisfy the conscience of the court of the truth of the violation. It does not have to be established beyond a reasonable doubt." *State v. Guthrie*, 2011-NMSC-014, ¶ 14, 150 N.M. 84, 257 P.3d 904 (alteration, internal quotation marks, and citation omitted). "To meet this burden, the [s]tate must introduce evidence that a reasonable and impartial mind would be inclined to conclude that the defendant has violated the terms of probation." *State v. Leon*, 2013-NMCA-011, ¶ 36, 292 P.3d 493. "Once the state offers proof of a breach of a material condition of probation, the defendant must come forward with evidence to excuse non-compliance." *Id.* (internal quotation marks and citation omitted). The Rules of Evidence do not apply to hearings related to revocation of probation. Rule 11-1101(D)(3)(d) NMRA.

**{14}** Although Defendant "challenges the sufficiency of the evidence supporting each of his [or her] probation violations, if there is sufficient evidence to support just one violation, we will find the district court's order was proper." *Leon*, 2013-NMCA-011, ¶ 37. We conclude that the district court did not abuse its discretion in finding that the State met its burden as to the battery against Cunningham and that Defendant did not present evidence to excuse her behavior. *Id.* ¶ 36. This conclusion obviates the need to address the sufficiency of the evidence related to battery against Martinez and Defendant's argument that the district court improperly admitted Martinez's testimony.

**{15}** The district court heard the following evidence. Defendant began her probation in October 2014. While on probation, Defendant stayed with Karim Cunningham in his apartment for a short period. Cunningham testified that in November 2014, as a result of a verbal disagreement between the two, Defendant struck him "eight or nine times" in the face with a closed fist, scratched him, and caused a knot on his forehead, and that the battery occurred near the back door of his apartment. Cunningham testified that a "light, skinny guy, a brown skinny guy" stood nearby while Defendant was hitting him

and that two other women were standing in the back doorway. After Defendant left with the other unidentified people, Cunningham called the Albuquerque Police Department and officers arrived shortly thereafter.

**{16}**     One of the officers responding to Cunningham's call testified that, when he arrived, Cunningham had dried blood around his nose and a laceration on his chest. The officer testified that Cunningham told the officer that Defendant had punched Cunningham in the head while he was near the back door of his apartment. The officer testified that Cunningham had also reported to the officer that Defendant and a "light-skinned Black male" had both beaten him, and that two other unidentified women stood in the back doorway during the affray. The officer's lapel video from his interview with Cunningham was admitted without objection during the hearing.

**{17}**     The district court found that Defendant committed a battery upon Cunningham and that there was "no indication of self-defense or other defenses" justifying her conduct. It acknowledged that there were "some inconsistencies in [Cunningham's] testimony, but not regarding [Defendant]'s participation. [Cunningham] clearly testified that she participated in a battery." It went on, "[t]here was physical evidence of a battery upon [Cunningham] to his nose and head. He was able to identify [Defendant], based on the fact he knew her, and that she had resided at his residence." It reiterated that "there was no indication of self-defense or other defenses that would mitigate or eliminate those allegations."

**{18}**     Defendant argues that the inconsistencies between Cunningham's testimony and what he told the officer at the scene "render[ Cunningham's] entire version of events untrustworthy" and that Cunningham had a motive to lie to "get [Defendant] in trouble with the law." Some of the things that Cunningham told the officer were inconsistent with Cunningham's testimony. For instance, the officer testified that Cunningham stated that the dispute began when he told Defendant she had to leave his apartment because he did not want her using the phone to threaten people, whereas Cunningham testified that it began when he told Defendant that her friend could not also stay in the apartment. However, as Defendant also recognizes, resolution of conflicts in the testimony and credibility determinations are for the trier of fact. We do not reweigh the evidence and instead "defer to the district court when it weighs the credibility of witnesses and resolves conflicts in witness testimony." *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482.

**{19}**     Moreover, Defendant does not point to any other evidence in the record to overcome the reasonable inference from the above testimony that Defendant committed battery in violation of the conditions of her probation. Nor does she point us to any evidence that she had an excuse for this non-compliance. Accordingly, we conclude that the evidence was sufficient for a reasonable mind to conclude that Defendant violated her probation. Hence, the district court did not abuse its discretion in finding that Defendant had violated her probation by battering Cunningham.

**V.      The 2008 Plea Agreement Governed the 2015 Enhancement**

**{20}** Defendant also argues that the district court's imposition of a habitual offender enhancement in 2015 was improper because the 2009 Verbal Agreement "reflected an agreement with the State that her sentence was no longer subject to habitual offender enhancements." "A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and approved by the [district] court." *State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954 (internal quotation marks and citation omitted); *see* Rule 5-304(B) NMRA (providing that the district court "may accept or reject the [plea] agreement"). When reviewing plea agreements, "we construe the terms of the plea agreement according to what [the d]efendant reasonably understood when he [or she] entered the plea." *Fairbanks*, 2004-NMCA-005, ¶ 15 (internal quotation marks and citation omitted). "If the [district] court resolves alleged ambiguities with the parties at the time of the plea, and no further objection is made, the agreement is no longer ambiguous on those points addressed by the court." *Id.* (alteration, internal quotation marks, and citation omitted). "However, if the ambiguities are not addressed by the district court and there is no other relevant extrinsic evidence to resolve the ambiguity, the reviewing court may rely on the rules of construction, construing any ambiguity in favor of the defendant." *Id.* In doing so, we apply a de novo standard of review. *Id.*

**{21}** Defendant first argues that she reasonably understood the State's statements at the 2009 hearing to offer (1) a single enhancement of eight years, and (2) forbearance of future habitual offender enhancements in exchange for her admission of the alleged 2009 probation violations. In a variation of this argument, she contends that the 2009 Verbal Agreement replaced or modified the 2008 Plea Agreement. We disagree with both contentions.

**{22}** Although Defendant focuses her arguments on the 2009 Verbal Agreement, that agreement does not exist in a vacuum. Rather, it must be considered in light of the 2008 Plea Agreement, in which the State unequivocally reserved its broad authority to seek habitual offender enhancements should Defendant violate the terms of her probation. *See State v. Leyba*, 2009-NMCA-030, ¶ 21, 145 N.M. 712, 204 P.3d 37 (stating that "the [s]tate [has] broad discretion to seek habitual offender enhancement[s]"). The State appeared to acknowledge the 2008 Plea Agreement at the 2009 hearing by observing that Defendant was subject to thirty-one years of habitual offender enhancements. This calculation is consistent with the possible habitual offender enhancements (eight years for each of the four counts to which Defendant pled guilty in the 2008 Plea Agreement), less one year for the enhancement already imposed at the initial sentencing. *See* § 31-18-17(C) (providing for habitual offender enhancements of eight years when the defendant has been convicted of three or more prior felonies); *Howard*, 1989-NMCA-029, ¶ 17 (stating that each "basic sentence" imposed may be enhanced). In addition to the State's reference to the potential enhancements, the district court conducted a colloquy with Defendant as to each of the four admitted prior convictions listed in the State's supplemental information and noted that they were the same four prior convictions listed in the 2008 Plea Agreement. The 2008 Plea Agreement thus was invoked multiple times at the 2009 hearing.

**{23}** Here, Defendant argues that her interpretation of the 2009 Verbal Agreement was reasonable because "nothing in the 2009 hearing . . . indicated that [Defendant] would ever be subjected to any part of the remaining habitual offender time." However, this argument ignores the existence of the 2008 Plea Agreement. *Leyba* is instructive on this point. There, the defendant "agreed to plead guilty . . . , and the State agreed to dismiss the remaining three charges and not bring habitual offender proceedings . . . "IF AND ONLY IF [the d]efendant complete[d] *at least one year* of inpatient alcohol treatment, and successfully complete[d] probation without violation." 2009-NMCA-030, ¶ 2 (alterations, internal quotation marks, and citation omitted). One month after he was sentenced, the defendant was terminated from the inpatient treatment program he had entered as a special condition of his probation. *See id.* ¶ 4. The defendant admitted the violation in an agreement with the [s]tate. *Id.* The defendant's prior felony convictions were listed in the probation violation agreement, but had been crossed out. *Id.* ¶ 21. After a series of events not relevant to our discussion, the [s]tate filed a supplemental information and argued that the defendant's initial sentence "should be enhanced[,] pursuant to . . . [Section] 31-18-17(C)." *Id.* ¶ 7. In pertinent part, the defendant argued that the probation violation agreement should be interpreted to prohibit the State from seeking a habitual offender enhancement, even though such enhancements were permitted in the initial plea agreement. *Id.* ¶ 19.

**{24}** The Court rejected this argument. The Court observed that "there [wa]s no express language in the . . . probation violation agreement binding the [s]tate from subsequently seeking an enhanced sentence" and the fact that the prior felony convictions had been crossed out "d[id] not control whether the [s]tate had authority to seek a habitual offender enhancement . . . under the terms of the original . . . plea and disposition agreement." *Id.* ¶ 21. It concluded that, "[g]iven the terms of the original plea and disposition agreement, coupled with the [s]tate's broad discretion to seek habitual offender enhancement, the absence of any express language limiting this discretion demonstrates that no such agreement between the [s]tate and [the d]efendant was reached." *Id.*

**{25}** Like in *Leyba*, the 2009 Verbal Agreement was silent as to its effect on the State's broad authority to enhance as set out in the 2008 Plea Agreement. Hence, given the explicit and repeated references in the 2008 Plea Agreement to the State's ability to seek future enhancements and the absolute silence as to future enhancements in the 2009 Verbal Agreement, it was unreasonable for Defendant to understand the 2009 Verbal Agreement as precluding all future enhancements.

**{26}** For the same reasons, the 2009 Verbal Agreement did not modify or supplant the 2008 Plea Agreement. "The parties to a written contract may modify that contract by express or implied agreement as shown by their words and conduct." *Medina v. Sunstate Realty, Inc.*, 1995-NMSC-002, ¶ 14, 119 N.M. 136, 889 P.2d 171. However, silence on habitual offender enhancements is not evidence of intent by the parties to alter the provisions of the 2008 Plea Agreement explicitly providing for such enhancements. *See State v. Trujillo*, 2007-NMSC-017, ¶ 12, 141 N.M. 451, 157 P.3d 16 (stating that "the plea agreement's silence on the subject of habitual-offender charges

cannot inure to [the defendant]'s benefit"); *cf. Leyba*, 2009-NMCA-030, ¶ 22 (stating that the defendant "may not rely on the absence of" certain language in a "probation violation agreement to [bar] the subsequent filing of the habitual offender supplemental information"); *Valley Bank of Commerce v. Hilburn*, 2005-NMCA-004, ¶ 25, 136 N.M. 741, 105 P.3d 294 ("[T]he law requires that an oral modification to a written contract be proved by clear and convincing evidence[.]").

**{27}**   Finally, Defendant argues that, because "the district court did not address [at the 2009 hearing] any potential future enhancements with [Defendant] nor did it discuss the continuing applicability of the 2008 [P]lea [A]greement," the 2009 Verbal Agreement was ambiguous and should be construed in her favor. As noted above, however, given the explicit provisions in the 2008 Plea Agreement and the lack of evidence that both parties intended to modify that agreement, silence in the 2009 proceedings does not, by itself, create an ambiguity in the 2009 Verbal Agreement.

**{28}**   To the extent Defendant argues that the district court's failure to specifically advise her in the 2009 hearing that she remained exposed to future enhancements rendered the 2009 Verbal Agreement otherwise improper, we disagree. *Cf. Marquez v. Hatch*, 2009-NMSC-040, ¶¶ 7-11, 146 N.M. 556, 212 P.3d 1110 (stating that "when a defendant's plea will most certainly result in an immediate sentence enhancement because of the defendant's prior convictions, the district court must advise the defendant of such likelihood before accepting the plea"). The 2008 Plea Agreement provided, among other references to habitual offender enhancements, that "[i]f . . . Defendant later violates . . . probation, she could do the balance of the sentence and the State may bring additional [h]abitual [o]ffender enhancements as [to] each felony [c]ount" for which Defendant was charged. Thus, both the 2009 probation violation proceeding and the imposition of a habitual offender enhancement were contemplated by the parties in the 2008 Plea Agreement. Given our conclusion that the 2009 Verbal Agreement did not supplant or alter the 2008 Plea Agreement, the district court was not required to reiterate the terms of the 2008 Plea Agreement at the 2009 hearing. *Cf. State v. Garcia*, 1996-NMSC-013, ¶ 17, 121 N.M. 544, 915 P.2d 300 (stating that "provided the record shows the defendant had the requisite information, the court need not be the only source of . . . information" about the charges to which the defendant is pleading guilty). *But see* Rule 5-303(F)(2) NMRA (providing that "[t]he [district] court shall not accept a plea of guilty or no contest without first, . . . informing the defendant of and determining that the defendant understands . . . the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered, including any possible sentence enhancements").[1]

## VI.   The 2015 Enhancement Was Not Barred by Section 31-18-17(D)(1)

**{29}**   Section 31-18-17(D)(2) provides that a prior felony may be the basis of an enhancement "when less than ten years have passed" between "the instant felony conviction" and the date "the person completed serving his sentence or period of probation or parole for the prior felony[.]" Defendant argues that under *State v. Triggs*, 2012-NMCA-068, ¶¶ 17-19, 281 P.3d 1256, the prior felony convictions in the 2008 Plea

Agreement could not be used in 2015 to enhance her sentence because "they had since expired under Section 31-18-17(D)(1)." Whether Defendant's "previous felony conviction[s] can be used for the purposes of sentence enhancement under Section 31-18-17 is a question of law that we review de novo." *Leon*, 2013-NMCA-011, ¶ 43.

**{30}** As a preliminary matter, we note that the date contemplated in Section 31-18-17(D)(1) is the date "the person completed serving his sentence or period of probation or parole for the prior felony[.]" Both parties base their arguments on the dates that Defendant was convicted of the prior felonies and there is no indication in the record of the dates on which Defendant completed her sentences for the prior felony convictions. Because the dates of the completion of Defendant's sentences perforce fall after the dates of conviction, we likewise rely on the dates of conviction in our analysis.

**{31}** In *Triggs*, the question before the Court was whether the district court correctly concluded that it lacked discretion to order habitual offender enhancements to run concurrently. 2012-NMCA-068, ¶ 13. The district court had imposed habitual offender enhancements to "each of the seven [underlying] offenses [of] four years, and ordered the sentences to be served consecutively, resulting in a total sentence of twenty-eight additional years in prison." *Id*. ¶ 1. The district court apparently agreed with the State that "where a parole violation triggers habitual offender enhancements to a sentence, the enhanced sentence is not a new sentence and must run consecutive if the underlying crimes being enhanced run consecutive." *Id*. ¶ 17. This Court disagreed and held that "the original judgment does not bind the judge who revokes parole." *Id*. It went on, "[t]his principle is consistent with case law stating that enhanced sentences are new sentences and that in imposing the new enhanced sentences, the [district] court's arrangement of the manner in which the new enhanced sentences were to be served was not limited by the arrangement for serving the regular sentences." *Id*. (alteration, internal quotation marks, and citation omitted). The matter was remanded to the district court to exercise its discretion as to whether the enhancement periods should run concurrently or consecutively. *Id*. ¶ 23.

**{32}** Defendant extrapolates from the Court's statement that "enhanced sentences are new sentences" the proposition that an enhancement may be based only on a prior felony convictions that occurred within ten years of the date of the probation revocation. But the issue in *Triggs* was the scope of the district court's discretion and whether it was limited by the way the original sentence was structured. The phrase relied on by Defendant must be understood in that context.

**{33}** This Court recently recognized the limits of the *Triggs* holding in *State v. Yazzie*.[2] 2018-NMCA-001, ¶ 20, 410 P.3d 220, *cert. denied*, ___ P.3d ___ (No. S-1-SC-36544, Aug. 30, 2017). Before the Court was the apparent tension between *Triggs* and *State v. Ortega*, in which this Court stated that "[a] probation violation is not a crime and does not trigger an enhancement as a habitual offender" and, consequently, "enhancement at the time of the probation violation relates to the district court's sentence for the underlying crimes." 2004-NMCA-080, ¶ 8, 135 N.M. 737, 93 P.3d 758. The *Yazzie* Court held that there was "no conflict" between *Ortega* and *Triggs* because "*Triggs* [merely]

reaffirms the discretion of the district court in determining the manner in which a defendant will serve multiple sentences." *Yazzie*, 2018-NMCA-001, ¶ 20. Thus, "[e]nhanced sentences may be new—in that they are newly imposed after the original sentence for a probation violation—but this does not strip a newly imposed sentence of its relationship to the original sentence, the grounds for which the sentence is being enhanced." *Id.*

**{34}** Defendant does not dispute that the prior felony convictions listed in the 2008 Plea Agreement were entered within ten years of the 2008 conviction. Hence, consistent with *Yazzie* and *Ortega*, the 2015 enhancement was valid because the prior felony convictions on which the district court relied occurred within ten years of the 2008 convictions.

**CONCLUSION**

**{35}** For the foregoing reasons, we affirm.

**{36} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, JUDGE**

**JACQUELINE R. MEDINA, JUDGE**

---

[1]Rule 5-303(F)(2) was amended after the New Mexico Supreme Court issued its decision in *Marquez* to include the phrase "including any possible sentence enhancements." *See* Rule 5-303 Comm. cmt. The March 2009 hearing at issue here predated both *Marquez* and the effective date of the amendment (December 3, 2010). Hence, the amended rule did not apply here. *See Howell v. Heim*, 1994-NMSC-103, ¶ 17, 118 N.M. 500, 882 P.2d 541 ("New Mexico law presumes that statutes and rules apply prospectively absent a clear intention to the contrary."); *see also* NMSA 1978, § 12-2A-8 (1997) ("A statute or rule operates prospectively only unless the statute or rule expressly provides otherwise or its context requires that it operate retrospectively.").

[2]Defendant properly alerted this Court to *Yazzie*, which was pending before this Court when she filed the brief in chief.